A04A1196. KRUT et al. v. WHITECAP HOUSING GROUP, LLC.
(602 SE2d 201)

ELLINGTON, Judge.

Whitecap Housing Group, LLC sued October Farm, Inc., October Farm's president, Eric Krut, and Haynie, Litchfield & Crane, P.C. for breach of contract and the return of $50,000 in escrowed funds, among other claims. October Farm and Krut appeal the trial court's orders (i) granting summary judgment to Whitecap as to the validity of a mechanic's lien filed by October Farm, and (ii) denying their

motion to dismiss or, alternatively, to stay proceedings and to compel arbitration. Because we conclude that October Farm and Whitecap agreed to arbitrate a dispute regarding the release of the escrowed funds, the trial court erred in failing to stay Whitecap's claim for the return of escrowed funds but did not err in failing to stay Whitecap's other claims. We also conclude that the trial court did not err in granting summary judgment to Whitecap as to the validity of October Farm's lien. Accordingly, we reverse in part and affirm in part and remand with direction.

On February 21, 2001, October Farm, as seller, and Whitecap, as buyer, entered into two separate contracts for the sale of lots 2, 3, and 4 of the October Farm subdivision in Fulton County (the "Lot 2 Sale Agreement" and "Lot 3-4 Sale Agreement"). On April 25, 2001, October Farm and Whitecap agreed that October Farm would escrow $50,000 with Haynie, Litchfield & Crane, P.C. as escrow agent, "until an agreement with the Northridge Homeowners Association, acceptable to the purchaser, is formalized." October Farm and Whitecap entered into another agreement on July 2, 2001, pursuant to which $50,000 would be held in escrow until the private drive described on an attached plat was constructed by October Farm. It appears from the parties' briefs that the escrowed funds referred to in the July 2, 2001 agreement are the same as, and not in addition to, the escrowed funds contemplated by the April 25, 2001 agreement. The July 2, 2001 agreement provides that it is a "formal additional agreement" between the parties of the attached "real estate purchase contract dated February 21, 2001."[1] Further, "[t]his amendment of the original executed version shall succeed any previous version in whole or in part."

The substance of the July 2, 2001 agreement is contained in five paragraphs. In the first paragraph, October Farm agrees to escrow $50,000 until the private drive described on an attached plat is constructed. In the second paragraph, Whitecap is authorized to use the escrowed funds "as the remedy" to pay for the work should it not be completed in 30 days. The third paragraph contains the specific provisions at issue here, and states:

> Haynie, Litchfield & Crane[, P.C.] will act as escrow agent. A release signed by [October Farm] and [Whitecap] will suffice as termination of the escrow. In the event of a dispute, both parties agree to choose a mutually acceptable arbiter within 10 days of receipt of written notice by either party to said

---

[1] There are no attachments to the July 2, 2001 agreement in the record. Both the Lot 2 Sale Agreement and Lot 3-4 Sale Agreement were dated February 21, 2001.

agent. The agent will hold the funds until the arbiter renders a decision. [Whitecap] agrees to respond to [a] release request within 24 hours of work completion notice.

In the fourth paragraph, October Farm agrees to reimburse Whitecap for interest costs associated with financing the purchase price of lots 3 and 4 until the private drive is completed. Finally, Whitecap agrees to reimburse October Farm for the cost of building permits on lots 2, 3, and 4 before beginning housing construction on the lots.

Although October Farm performed construction work on the private drive, a dispute arose as to whether the private drive was completed in a workmanlike and timely manner. In correspondence to counsel for Whitecap, counsel for October Farm stated that October Farm had satisfied the requirements for release of the escrowed funds and demanded the dispute be resolved by binding arbitration in accordance with the July 2, 2001 agreement. October Farm also filed a Materialman's and Mechanic's Claim of Lien on lots 2, 3, and 4 (the "Claim of Lien"), which October Farm represented it would release on payment of the escrowed funds. In other correspondence, Whitecap maintained that the arbitration clause in the July 2, 2001 agreement was unenforceable, while October Farm repeated its demands for binding arbitration.

On August 9, 2002, Whitecap filed the underlying complaint against October Farm, Krut, and Haynie, Litchfield & Crane, P.C. In Count 1, Whitecap claimed that October Farm breached the Lot 3-4 Sale Agreement, the April 25, 2001 agreement, and the July 2, 2001 agreement. In Count 2, Whitecap asserted slander of title. In Counts 3 and 4, respectively, Whitecap asked for a declaratory judgment as to its ownership of lots 2, 3, and 4 and for attorney fees. In Count 5, Whitecap asked for the release and award of the $50,000 in escrowed funds. October Farm and Krut filed a counterclaim in which they demanded arbitration of all disputes, and, without waiving demand for arbitration, asserted the Claim of Lien. Pursuant to its request, Haynie, Litchfield & Crane, P.C. paid the escrowed funds into the registry of the court.

Whitecap filed a motion for summary judgment on the Claim of Lien. October Farm and Krut then filed a motion to dismiss or to compel arbitration. After hearing argument of counsel, the trial court entered an order denying October Farm's and Krut's motion to dismiss or compel arbitration, and entered a second order granting summary judgment to Whitecap on the Claim of Lien. October Farm and Krut appeal from these two orders.

October Farm and Krut claim the trial court erred in denying its motion to dismiss or compel arbitration because (i) the arbitration

provision in the July 2, 2001 agreement is valid and enforceable under federal law, (ii) the arbitration provision is not ambiguous, and (iii) the parties' dispute falls within the scope of the arbitration provision. October Farm and Krut also claim the trial court erred because (i) the arbitration provision is valid and enforceable under Georgia law, (ii) all ambiguities must be resolved in favor of arbitration, and (iii) if the arbitration provision is ambiguous, the trial court should have held a factual hearing to determine its meaning. Although October Farm and Krut do not specifically address the grounds for grant of partial summary judgment to Whitecap on the Claim of Lien, they contend that the trial court erred in considering the issue because the trial court should have stayed Whitecap's action pending arbitration.

1. A threshold issue is whether the Federal Arbitration Act ("FAA"), 9 USC §§ 1-16, or Georgia law applies to the interpretation and application of the disputed arbitration clause. 9 USC § 2 provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"Where . . . a transaction involves commerce, within the meaning of the [FAA], the state law and policy with respect thereto must yield to the paramount federal law. Home construction generally involves interstate commerce, because most building materials pass in interstate commerce." (Citations and punctuation omitted.) *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 673 (1) (583 SE2d 466) (2003). See also *Allied-Bruce Terminix Cos. v. Dobson*, 513 U. S. 265, 281 (115 SC 834, 130 LE2d 753) (1995) (Section 2 of FAA applies if transaction in fact involves interstate commerce even if parties did not contemplate interstate commerce connection).

Krut's affidavit shows that October Farm used erosion control materials manufactured outside Georgia and vehicles manufactured outside the United States, and obtained insurance from a Maryland based insurer. The construction subcontractor employed laborers who were not Georgia citizens, used vehicles manufactured outside Georgia, and used gravel and subsurface rock from Tennessee in the driveway construction. "[W]here the contractor uses employees from another state, and material incorporated into the construction is purchased in another state, and some of the subcontractors are from another state, these facts are sufficient to support a finding of the

trial court that this contract involved 'commerce' as that term is used in the [FAA]." *ADC Constr. Co. v. McDaniel Grading*, 177 Ga. App. 223, 225 (1) (338 SE2d 733) (1985). See also *Brockett Pointe Shopping Center v. Development Contractors*, 193 Ga. App. 854, 856 (389 SE2d 374) (1989) (arbitration agreement governed by FAA because out-of-state goods, services, and materials were supplied during performance of contract); *McCormick-Morgan, Inc. v. Whitehead Elec. Co.*, 179 Ga. App. 10, 12 (345 SE2d 53) (1986) (FAA applied to contract's arbitration provision where the work was performed in Georgia but one contractor was not from Georgia and out-of-state materials were incorporated in construction). Based on the foregoing, we conclude that the July 2, 2001 agreement is a "contract evidencing a transaction involving commerce" for purposes of the FAA. 9 USC § 2.

Whitecap contends that the July 2, 2001 agreement is not governed by the FAA because it does not involve interstate commerce. While Whitecap acknowledges that construction contracts are generally governed by the FAA, see *Brockett Pointe*, 193 Ga. App. at 856; *McCormick-Morgan, Inc.*, 179 Ga. App. at 12; *ADC Constr. Co.*, 177 Ga. App. at 225, Whitecap argues that the July 2, 2001 agreement is an amendment to a contract to buy and sell Georgia real estate. They further argue that a real estate sales contract should fall outside the scope of the FAA, notwithstanding that ancillary construction or repairs may be associated with the sale of land. Whitecap does not present any factually analogous authority to support its argument, and relies on *Columbus Anesthesia Group, P.C. v. Kutzner*, 218 Ga. App. 51 (459 SE2d 422) (1995), which found Georgia law and not the FAA applied to an arbitration clause in an employment agreement.

We reject the argument that we should consider the July 2, 2001 agreement to be analogous to a real estate purchase agreement. The primary focus of the July 2, 2001 agreement is the construction of the private drive. Arbitration under the July 2, 2001 agreement would involve questions surrounding the release of the escrow and not the transfer of real estate. Although the July 2, 2001 agreement is stated to be both an "additional agreement between the purchasers and sellers of the attached real estate purchase contract" and an "amendment," the underlying real estate had been transferred by warranty deed to Whitecap before the July 2, 2001 agreement was executed. Accordingly, we conclude that the July 2, 2001 agreement should be viewed similarly with construction contracts for purposes of determining whether its arbitration clause is governed by the FAA.

2. We find the trial court erred in denying October Farm's and Krut's motion to stay and compel arbitration with respect to Whitecap's claim for the escrowed funds. More specifically, we find the trial court erred in concluding that (i) the parties did not express a sufficiently clear intent to arbitrate, (ii) the parties' failure to specify

the rules of arbitration or whether arbitration would be binding provided grounds for refusing to stay the proceedings, and (iii) a stay was not required as to Whitecap's claim for the escrowed funds. "[T]he question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination." *BellSouth Corp. v. Forsee*, 265 Ga. App. 589, 590 (595 SE2d 99) (2004). "[T]he standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law. In addition, the construction of a contract is a question of law for the court that is subject to de novo review." (Citations omitted.) *Moore & Moore Plumbing v. Tri-South Contractors*, 256 Ga. App. 58, 60-61 (1) (567 SE2d 697) (2002).

(a) October Farm and Krut contend the trial court erred in ruling that "the putative arbitration clause [in the July 2, 2001 agreement] lacks sufficient clarity as to its intent to require arbitration of any dispute under either the [FAA] or the Georgia Arbitration Code." We agree. The July 2, 2001 agreement requires that in the event of a dispute the parties will choose a "mutually acceptable arbiter," and the escrow agent will hold the escrowed funds pending the decision of the arbiter. An "arbiter" is "a person chosen to decide a controversy; an arbitrator, referee."[2] The policy of the FAA in favor of arbitration "requires a liberal reading of arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 23 (103 SC 927, 74 LE2d 765) (1983). We find that the July 2, 2001 agreement is sufficiently clear as to the parties' intent to arbitrate, and the agreement to arbitrate is "valid, irrevocable, and enforceable." 9 USC § 2.

(b) The trial court also held that "[t]he language is unclear whether the parties intended to have binding arbitration and if so, what rules and procedures would apply to such proceedings." These are not sufficient reasons for failing to enforce an arbitration clause. Although the arbitration is not expressly stated to be "binding" or "nonbinding," an agreement to arbitrate is enforceable in either case. See *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F3d 1205, 1208 (9th Cir. 1998) (agreement to enter into nonbinding arbitration enforceable under FAA). As the escrow agent is authorized to release the escrowed funds in accordance with the arbiter's decision, the parties necessarily intended that the arbiter's decision have a binding effect as to disposition of the escrowed funds. See generally *Rainwater v. National Home Ins. Co.*, 944 F2d 190, 192 (4th Cir. 1991) (noting presumption that one submits to arbitration, as opposed to mediation, because of the binding quality of the process). The parties do not

---

[2] Black's Law Dictionary (6th ed. 1990), p. 104.

have to establish specific rules and procedures for an agreement to arbitrate to be binding; rather, procedural matters are within the discretion of the arbitrator. "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston*, 376 U. S. 543, 557 (84 SC 909, 11 LE2d 898) (1964).

(c) The trial court further found that "the putative arbitration provision concerns a dispute over the release of escrowed funds by the escrow agent. It does not purport to cover disputes of other matters, which do not relate to the release of the escrowed funds." We agree with the trial court that the arbitration clause of the July 2, 2001 agreement addresses a dispute as to the release of the escrowed funds. The arbitration clause is imbedded in the paragraph establishing the escrow agent, and immediately follows a sentence discussing the release of the escrow: "A release signed by [October Farm] and [Whitecap] will suffice as termination of the escrow. In the event of a dispute, [the parties will choose an arbiter]." The parties are directed to choose an arbiter within ten days of written notice to the escrow agent. The only express effect of the arbiter's decision is on the escrow agent, who is instructed "to hold the funds until the arbiter renders a decision." Although doubts as to the scope of arbitration should be interpreted in favor of arbitration,[3] we must conclude that the parties did not contemplate arbitrating all disputes related to or arising from the July 2, 2001 agreement, but only to use an arbiter to resolve disputes involving the escrow. The claims asserted by Whitecap for breach of contract, slander of title, and declaratory judgment clearly fall outside the substantive scope of the arbitration contemplated by the contracting parties. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Citation and punctuation omitted.) *AT&T Technologies v. Communications Workers of America*, 475 U. S. 643, 648 (106 SC 1415, 89 LE2d 648) (1986).

Although we conclude the scope of arbitration was not broad, the trial court was nevertheless required to stay the action as to the escrow dispute. Our Supreme Court has applied FAA's mandatory stay provision, 9 USC § 3, to actions brought in a Georgia court. *DiMambro-Northend Assoc. v. Blanck-Alvarez, Inc.*, 251 Ga. 704, 707 (1) (309 SE2d 364) (1983). 9 USC § 3 provides in applicable part, that

---

[3] There is a "presumption . . . in favor of arbitrability with respect to the question whether a particular issue is within the scope of a valid arbitration agreement." *Collins v. Intl. Dairy Queen*, 2 FSupp.2d 1473, 1477 (M.D. Ga. 1998).

the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

In applying Sections 3 and 4[4] of the Act, the United States Supreme Court has found that where there are issues subject to arbitration, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (Emphasis in original.) *Dean Witter Reynolds, Inc. v. Byrd*, 470 U. S. 213, 218 (105 SC 1238, 84 LE2d 158) (1985). Applying that logic and *DiMambro-Northend Assoc.*, the trial court was required to stay the action and order arbitration as to the release of the escrowed funds. We see no reason why the escrow agent's deposit of the escrowed funds into the registry of the trial court would preclude the disposition of those funds from being determined by arbitration.

Having found that the other claims asserted by Whitecap are not subject to arbitration, the question becomes whether these claims should be stayed pending arbitration as to the release of the escrowed funds. When faced with an action containing both arbitrable and nonarbitrable issues, the federal courts have allowed both to continue in bifurcated proceedings. "[T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc.* at 217. "[A]rbitration agreements should be enforced even where those agreements necessarily result in inefficient or duplicative bifurcated proceedings." (Citation and punctuation omitted.) *Louis Dreyfus Corp. v. 27,946 Long Tons of Corn*, 830 F2d 1321, 1329 (5th Cir. 1987). See also *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F3d 1109, 1117 (11th Cir. 2001) (declining to endorse suggestion that arbitration is not appropriate where it could inefficiently result in bifurcated proceedings). Following the lead of the federal courts in applying the FAA, we conclude that the trial court was not required to stay proceedings apart from Count 5 of the complaint.

---

[4] 9 USC § 4 provides in relevant part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . , for an order directing that such arbitration proceed in the manner provided for in such agreement."

3. The trial court granted summary judgment to Whitecap on October Farm's counterclaim to enforce its Claim of Lien because October Farm "did not and has not recorded an affidavit for the commencement of the action to establish the lien as required by OCGA § 44-14-361.1 (a) (3)." October Farm does not dispute the order on its merits, but claims that the trial court should not have ruled on Whitecap's motion for partial summary judgment because the underlying case should have been dismissed or stayed pending arbitration. The basis for the trial court's ruling does not relate to the release of the escrowed funds, and we see no grounds for reversing its order as to the Claim of Lien.

For the foregoing reasons, the trial court's order denying October Farm's motion to dismiss or, alternatively, to stay proceedings and to compel arbitration, must be reversed and the case remanded with the following directions. The trial court shall stay and compel arbitration as to Count 5 of the complaint. The trial court may proceed with litigation of Counts 1, 2, 3, and 4, if it so chooses. The trial court's order granting partial summary judgment to Whitecap as to the validity of October Farm's mechanic's lien is affirmed.

*Judgments affirmed in part and reversed in part and case remanded with direction. Andrews, P. J., and Miller, J., concur.*

DECIDED JULY 9, 2004.

*Cushing, Morris, Armbruster & Montgomery, Kevin R. Armbruster, Jason C. Grech,* for appellants.

*Freeman, Mathis & Gary, T. Bart Gary, Stuart W. Gray, Christopher B. Holleman,* for appellee.