A04A1864. WITHERINGTON et al. v. ADKINS et al. ·
(610 SE2d 561)

MIKELL, Judge.

Janice and Gary Witherington appeal from the trial court's order granting summary judgment to Don Adkins and John Brunson based on its conclusion that the Witheringtons' complaint was barred by a final and binding arbitration award. The Witheringtons contend that the trial court erred because: (1) the arbitration award on their limited warranty claim did not preclude their claims for breach of contract and fraud; (2) they timely moved to vacate the arbitrator's award; and (3) precluding their breach of contract and fraud claims would violate public policy. For the reasons set forth below, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Viewed in this light, the record shows that the defendants began constructing the home at issue on April 10, 1998, and that they entered into a contract to sell the home to the Witheringtons on July 1, 1998, with a closing date of August 10, 1998. The contract was subsequently amended to reduce the purchase price by $8,000 and reschedule the closing date to October 9, 1998, to allow the defendants more time to complete the home. As the Witheringtons were staying in a motel while they waited for the home to be completed, the defendants allowed them to move into the home several weeks before the closing and before all construction was complete. The parties agree that all items were not complete at the time of the closing on October 9, 1998, and that the Witheringtons prepared a "punch list" of needed repairs and unfinished items. In December 1998, the Witheringtons moved out of their new home and back to their previous home.

Although the sales contract is silent on this issue, the parties agree that the defendants offered to provide a home buyers warranty to the Witheringtons. However, the record shows that the defendants did not apply for the warranty until May 14, 1999, and that Don Adkins signed the application on the same date. In the section titled "Effective Date of Warranty," the application incorrectly states that the date of closing and the date of earlier first occupancy was

"4/10/98." The application also shows a signature for Gary Witherington on the same date, but he denies signing this application. The application states above Gary Witherington's alleged signature:

HOME BUYERS ACKNOWLEDGMENT AND CONSENT

Your Builder is applying to enroll your home in the HBW insured warranty program. By signing below, you acknowledge that you have viewed and received a video of "Warranty Teamwork: You, Your Builder & HBW", you have read the Builder's Copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION contained therein. You further understand that when the warranty is issued on your new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the HBW Warranty Booklet. IF YOU, THE HOMEOWNERS HAVE NOT RECEIVED A CERTIFICATE OF WARRANTY COVERAGE AND A WARRANTY BOOKLET FROM HBW WITHIN THIRTY (30) DAYS AFTER CLOSING THEN NO WARRANTY EXISTS ON THE HOME AT THIS ADDRESS.

Although he submitted the application to the agent for the warranty company,[1] Adkins denied that he or Brunson signed Witherington's name on the application and also denied that either of them designated April 10, 1998, as the effective date of the warranty. The copy of the application in the record and Witherington's signature on it were not properly authenticated.

On May 19, 1999, National Home Insurance Company printed a Certificate of Warranty Coverage with an effective date of April 10, 1998. Gary Witherington admitted that he received this Certificate of Warranty Coverage which states:

The Builder Application for Home Enrollment that you signed with your Builder prior to your home being enrolled in the HBW program, this Certificate of Warranty Coverage and the enclosed Home Buyers Warranty Limited Warranty Booklet make up your warranty contract.

---

[1] The record contains no affidavits or deposition testimony by the agent for the warranty company.

Witherington also admitted that he received a copy of the Warranty Booklet which states:

> This Warranty Booklet and your Certificate of Warranty Coverage is your Builder's Limited Warranty to you. Your Builder warrants that, within the limitations described in these two documents, your Home will be free from major structural defects, and if so indicated on your Certificate of Warranty Coverage, will also be free from defects in workmanship and systems. . . .
>
> The Warranty is a contract between you and your Builder. HBW is the warranty administrator, but NOT a warrantor under the contract. . . .
>
> THIS IS AN EXPRESS LIMITED WARRANTY OFFERED BY YOUR BUILDER. To the extent possible under the law of your state, all other warranties, express or implied, including but not limited to any implied warranty of habitability, are hereby disclaimed and waived. . . .
>
> ARBITRATION. Any and all claims, disputes and controversies arising under or relating to this Agreement, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, and breach of any alleged duty of good faith and fair dealing, shall be submitted to arbitration by and pursuant to the rules of Construction Arbitration Services, Inc. (hereinafter "CAS"). . . . The decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction.

The Warranty Booklet also contained the following definitions:

> **Effective Date of Warranty** is your closing date, first title transfer or the date you or anyone else first occupied the Home if that was before closing. . . . **Warranty Term** is the period during which a warranted defect must first occur in order to be covered hereunder, and is that period which begins on the Effective Date of the Warranty as defined above and ends one, two, four, or ten years thereafter.

The Warranty Booklet required the homeowner to report defects to

the builder and to the Home Builder Warranty Customer Service Office "no later than 30 days after the expiration of your warranty. Complaints filed after that date will be denied because your warranty coverage will have expired." The Certificate of Warranty Coverage issued to Witherington provided one year of coverage for workmanship defects, two years of coverage for systems defects, and ten years of coverage for structural defects. Thus, at the time it was printed on May 19, 1999, proper notice could no longer be given for workmanship defects because the effective date of the warranty was listed as April 10, 1998.

Gary Witherington received a copy of the coverage certificate and the warranty booklet in June 1999 and subsequently retained counsel. On September 13, 1999, Witherington's attorney wrote the warranty company and requested that the effective date of the warranty be changed to the date the Witheringtons first occupied the home, September 25, 1998. The attorney also provided the warranty company with a notice of complaint form specifying the defects as "numerous deficiencies in finish, roof leaks, tile & grout cracks, code violations and home NOT FINISHED."

In November 1999, Witherington's attorney submitted a Request for Arbitration form signed by Gary Witherington to the warranty company. This form instructed homeowners to read their warranty booklet "for filing instructions and pertinent information before completing this form," but contained no express agreement for binding arbitration. The "Request for Arbitration" form instructed: "*You must* list the specific construction defect(s) and/or issue(s) to be arbitrated on the enclosed HBW 209B Form." Witherington's attorney simultaneously submitted another form titled "CONSTRUCTION DEFECT(S) TO BE ARBITRATED" which indicated that the Witheringtons wanted to arbitrate a "Claim for Fraud" and defects listed in "Attached Reports." The attached reports were generated by home inspectors and listed workmanship defects as well as items never completed. A representative from the warranty company responded to the Witheringtons' request and asked that a more specific list of the construction defects be provided that included the area of the home and applicable warranty section for each defect. The Witheringtons provided a more detailed list of the specific defects on January 6, 2000. This list did not include a general claim for fraud.

The arbitrator issued a written award on April 20, 2000, in which he summarized all of the disputes between the parties in terms of specific defects provided on a "Construction Defect(s) to be Arbitrated" form dated December 20, 1999. The arbitrator did not provide an express ruling on the effective date of the warranty or any claim for fraud in the purchase of the warranty. Instead, the arbitrator denied all but one of Witherington's claims based on the one-year

reporting requirements in the warranty booklet. Thus, the arbitrator did not address the merits of whether defects actually existed in the home.

Witherington appealed the arbitrator's order. The appellate arbitrator requested written responses from the parties with regard to whether the effective date of the warranty was April 10, 1998. Witherington's attorney submitted a letter which outlined his claim with regard to the proper effective date for the warranty. The appellate arbitrator upheld the original arbitrator's award on August 23, 2000, without explanation. There is no reference to any fraud claim in the appellate arbitrator's order.

After moving from the home in December 1998, the Witheringtons made no payments to their lender, who subsequently filed a petition for judicial foreclosure in superior court. The Witheringtons filed an answer, as well as a third-party complaint against the defendants on November 22, 2000. In their third-party complaint, the Witheringtons moved to set aside the final arbitration award. The trial court dismissed without prejudice the third-party complaint, as well as the petition to set aside the arbitration award, because it did not arise out of the same transaction as the lender's claim against the Witheringtons.

On September 18, 2002, over two years after receiving the final arbitration award, the Witheringtons filed suit against the defendants and asserted breach of contract and fraud claims. They claimed the defendants breached the contract by failing to complete construction and by constructing it "in an unsafe, uninhabitable, and unlawful manner." They claimed the defendants committed fraud by: (1) representing falsely that they would complete the residence after the closing; and (2) representing falsely that they would provide a valid home buyers warranty on the home.

After conducting limited discovery, the defendants moved for summary judgment, asserting that the lawsuit was barred by the arbitration award. The defendants also asserted that the arbitration award was final and binding because the Witheringtons failed to obtain an order setting aside the award. The Witheringtons subsequently amended their complaint, "out of an abundance of caution," and renewed their previous claim to set aside the arbitration award.[2] The trial court granted the defendants' summary judgment motion, finding that the arbitration award was final and binding on the Witheringtons and that they failed to move to have the award vacated within three months as required by OCGA § 9-9-13 (a).

---

[2] The amendment was filed almost three years after their motion to set aside the arbitration award was dismissed without prejudice.

1. The Witheringtons contend the arbitration award does not preclude their claims for breach of contract and fraud because "the sole legal effect of the subject arbitration was to preclude coverage under the Home Buyers Warranty." "Arbitration is a matter of contract, meaning that arbitrators derive their authority to resolve disputes only from the parties' agreement." (Citation and punctuation omitted.) *Doman v. Stapleton*, 256 Ga. App. 383, 388 (1) (568 SE2d 509) (2002). Thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Citation and punctuation omitted.) *Krut v. Whitecap Housing Group*, 268 Ga. App. 436, 442 (2) (c) (602 SE2d 201) (2004).

In this case, there is no evidence that either of the Witheringtons signed the application for the home warranty which contained the contractual consent for binding arbitration. Nonetheless, although not obligated to do so, Gary Witherington later agreed to binding arbitration by: (1) signing the request for arbitration form; (2) completing the "Construction Defects to Be Arbitrated Form"; and (3) signing the following acknowledgment before participating in the arbitration:

> I, the undersigned, acknowledge that the arbitration procedures have been fully explained to me and the arbitrator has the authority to make an award on the issues listed on the Request for Arbitration or Claim dated 11/5/99 in accordance with the arbitration provisions of the Warranty Agreement and the Builder Agreement.

Since Witherington agreed to allow the arbitrator to issue an award "in accordance with the arbitration provisions in the warranty booklet," and the warranty booklet provided for binding arbitration, Witherington agreed to binding arbitration. See *Adage, Inc. v. Bank of America*, 267 Ga. App. 877, 878 (2) (600 SE2d 829) (2004) (finding parties agreed to binding arbitration even though agreement to arbitrate did not use the word "binding").

Having determined that Witherington agreed to binding arbitration, we must determine the issues subject to the binding arbitration. Based on our review of the request for arbitration and the acknowledgment signed by Witherington, we find that he agreed to submit his fraud, defective construction, and incomplete construction claims to arbitration. The final arbitration award, however, did not address all of the issues presented for arbitration. Instead, it merely concluded whether coverage would or would not be provided under the terms of the warranty. Thus, we must determine whether this

award, which did not address all of the issues before the arbitrator, precludes the Witheringtons' right to file a lawsuit with regard to the unaddressed issues.

2. The statutory rules governing arbitration provide us with guidance on this issue. OCGA § 9-9-2 (c) provides that the Georgia Arbitration Code[3] applies "to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced. . . ." OCGA § 9-9-13 (b) (3) creates a mechanism for relief to a party that is prejudiced by an arbitrator's "imperfect execution" of his or her authority such "that a final and definite award upon the subject matter submitted was not made." See also *Amerispec Franchise v. Cross*, 215 Ga. App. 669, 670 (452 SE2d 188) (1994) (court may vacate arbitration award based on arbitrator's "significant failure to fully and clearly address the issues presented") (punctuation omitted). If an arbitrator fails to make a final and definite award, the prejudiced party may file an application to vacate the award in superior court. OCGA §§ 9-9-13 (b) (3); 9-9-4 (a) (1). However, the application to vacate must be filed "within three months after delivery of a copy of the award to the applicant." OCGA § 9-9-13 (a).

(a) Witherington contends that he complied with this requirement when he moved to set aside the arbitration award in the judicial foreclosure proceeding less than three months after the award was issued. Defendants assert that the motion should have been filed as a separate action, rather than a third-party complaint, and was therefore untimely. We disagree. OCGA § 9-9-4 (a) (1) specifically contemplates that applications made pursuant to the Georgia Arbitration Code can be made in a pending court action. Thus, we find that Witherington timely moved to vacate the arbitration award.

(b) Our analysis, however, does not end here because we must determine the effect of Witherington's failure to renew the motion until almost three years after the trial court dismissed it without prejudice. Witherington claims the trial court's order "should be interpreted to grant [him] leave to refile [his] claim at any time within the applicable statute of limitations" because the trial court did not specify a time in which it must be refiled. He further asserts that his renewal of the motion to vacate in amended complaint should relate back to the timely filed motion to vacate.

We find no merit in Witherington's claims. Although we have previously held that the renewal statute embodied in OCGA § 9-2-61 applies to cases involving arbitration awards, Witherington failed to renew his claim to vacate the arbitration award within the requisite

---

[3] OCGA § 9-9-1 et seq.

six-month period.[4] See *Hardin Constr. Group v. Fuller Enterprises*, 233 Ga. App. 717, 721 (1) (505 SE2d 755) (1998) ("arbitration award confirmation proceeding is a 'case' to which the renewal statute applies") (citation omitted). As a result, the arbitration award became final and binding, and he is precluded from seeking the relief he could have obtained had he timely moved to vacate the award. See *Galindo v. Lanier Worldwide*, 241 Ga. App. 78, 84 (4) (526 SE2d 141) (1999) (motion to vacate award must be filed within three months of award; party cannot wait and later raise same issues that could have been raised in a motion to vacate as a defense to motion to confirm an award); *Cullen v. Paine, Webber, Jackson & Curtis*, 863 F2d 851, 854 (II) (A) (11th Cir. 1989) ("failure of a party to move to vacate an arbitral award within the three-month limitations period . . . bars him from raising the alleged invalidity of the award as a defense in opposition to a motion . . . to confirm the award").

3. Since Witherington agreed to arbitrate the issues of fraud, defective construction, and incomplete construction, and the Witheringtons asserted the same claims in their lawsuit for damages, the trial court properly concluded that these claims were barred by the final and binding arbitration award.[5]

4. We find no merit in the Witheringtons' claim that allowing the arbitration award to bar their present lawsuit would violate public policy because the arbitrator did not issue an award on the merits. OCGA § 9-9-13 (b) (3) provided a mechanism for Witherington to move to vacate the arbitrator's award and he failed to timely avail himself of this procedure for relief. Moreover, "[t]he General Assembly's adoption of the Georgia Arbitration Code establishes a clear public policy in favor of arbitration." (Footnotes omitted.) *Haynes v. Fincher*, 241 Ga. App. 179, 181 (4) (525 SE2d 405) (1999).

5. Appellees' "Motion to Dismiss Appeal" is denied.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 9, 2005 —
RECONSIDERATION DENIED MARCH 3, 2005 — 

*John L. Strauss*, for appellants.

---

[4] OCGA § 9-2-61 (a) allows a plaintiff to recommence an action "either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later." Since the three-month period to file an application to vacate the award expired first, Witherington had six months after the dismissal to refile.

[5] The Witheringtons do not dispute on appeal the trial court's finding that both of them are bound by the arbitration award even though only Gary Witherington agreed to it. See *Bennett v. Cotton*, 244 Ga. App. 784, 787 (1) (536 SE2d 802) (2000) (wife precluded from asserting claims relating to construction of their residence already submitted to binding arbitration by her husband and co-owner of the property).

*Divine, Finney & Dorough, Kermit S. Dorough, Alexander H. Hart*, for appellees.