A04A2155. CASH IN ADVANCE OF FLORIDA, INC. et al.
v. JOLLEY.
(612 SE2d 101)

ADAMS, Judge.

Cash In Advance of Florida, Inc., Cash In Advance, Inc., Jack W. Griffin and "ABC Corporation," d/b/a PhoneCash USA (referred to collectively herein as "CIA") appeal from the trial court's denial of their motion to compel arbitration in the class action filed against them by Shakendra C. Jolley.

In reviewing the trial court's order, we look to see whether the trial court was correct as a matter of law in denying the motion to compel arbitration. See *Krut v. Whitecap Housing Group*, 268 Ga. App. 436, 441 (2) (602 SE2d 201) (2004). Thus, the construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review. Id. See also *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F3d 1255, 1257 (11th Cir. 2003) (appellate court applies de novo review to denial of motion to compel

arbitration under Federal Arbitration Act).[1]

The class action suit alleges violations of federal and Georgia law arising out of CIA's requirement that the class members purchase what Jolley contends were "grossly overvalued" phone cards as a condition to receiving a $200 loan. CIA also required its customers to sign an "Alternative Dispute Resolution Agreement," providing that any claims arising out of the phone card transactions would be arbitrated pursuant to the rules of the American Arbitration Association ("AAA"). The agreement also provides that the parties were to be responsible for their own attorney fees incurred in connection with the arbitration.[2]

In response to the motion to compel, Jolley argued that CIA's arbitration agreement was unenforceable because the provision regarding attorney fees was an illegal attempt to limit the remedies for her claim under the federal Truth In Lending Act ("TILA"), 15 USC § 1601 et seq. TILA provides that a plaintiff will recover his attorney fees if he prevails in an action against a lender, 15 USC § 1640 (a) (3),[3] and Jolley argued that the fee provision in the CIA arbitration agreement conflicts with TILA by providing that each party is responsible for its own fees. She also argued that because the arbitration agreement contained no severability clause, the offending fee provision could not be severed from the rest of the agreement, making it void in its entirety.

Although CIA acknowledged that the attorney fee provision in the arbitration agreement seemingly conflicts with TILA, it noted that the AAA rules also are incorporated into the agreement and that AAA Consumer Supplemental Rule C-7 (c) provides that an arbitrator may grant any remedy or relief that a party "could have received in court." CIA argued that this rule trumps the offending language of the agreement and effectively nullifies it.

But Jolley countered, and the trial court agreed, that even if the offending language was trumped by the AAA rules, the language of Rule C-7 merely *permits* an arbitrator to award attorney fees to a prevailing party, while TILA *mandates* a fee award. The trial court held that this distinction rendered the arbitration agreement unenforceable. In reaching this conclusion, the court relied upon a vacated

---

[1] As a threshold matter, we note that the agreement states, and the parties do not dispute, that the issue of arbitration in this case is governed by the Federal Arbitration Act ("FAA"), 9 USC §§ 1-16.

[2] The agreement states that "each party shall be responsible for such party's costs associated with arbitration, including all attorney's fees incurred by each party as a result of arbitration."

[3] That section provides that if a consumer successfully establishes a creditor's liability under TILA, in addition to other damages, the creditor is liable to the consumer for "the costs of the action, together with a reasonable attorney's fee as determined by the court."

decision by the Eleventh Circuit Court of Appeals, which held an arbitration agreement unenforceable because it contained language stating that the parties would share arbitration costs equally "despite any rule providing that any one party must bear the cost of filing and/or the arbitrator's fees." *Perez v. Globe Airport Security Svcs.*, 253 F3d 1280, 1282 (11th Cir. 2001), vacated, 294 F3d 1275 (11th Cir. 2002). The panel in *Perez* found that this provision "circumscribes the arbitrator's authority to grant effective relief by mandating equal sharing of fees and costs of arbitration despite the award of fees permitted a prevailing party by Title VII."[4] Id. at 1285. Despite the Eleventh Circuit's vacatur of this opinion, the trial court found its reasoning persuasive and held that the CIA arbitration agreement is unenforceable in its entirety.

As an initial matter, we note that the trial court's reliance upon the vacated opinion in *Perez* is not well founded, as the opinion has no precedential value.[5] Moreover, in adopting the holding in *Perez*, the trial court ignored applicable U. S. Supreme Court and Eleventh Circuit precedent that undercuts the application of the *Perez* reasoning in this case.[6]

In a U. S. Supreme Court case issued before the *Perez* decision, *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U. S. 79 (121 SC 513, 148 LE2d 373) (2000), the Court "made clear that the strong federal preference for arbitration of disputes expressed by Congress in the Federal Arbitration Act ('FAA') must be enforced where possible." (Footnote omitted.) *Musnick v. King Motor Co.*, 325 F3d at 1258 (II). There, the plaintiff argued that the arbitration agreement was unenforceable because it posed a risk that her ability to vindicate her statutory rights would be undone by high arbitration costs, and the Eleventh Circuit agreed. The Supreme Court reversed, holding that the mere possibility that Randolph could be "saddled with

---

[4] Title VII provided that a court, in its discretion, may award the prevailing party reasonable attorney fees, including expert fees, and costs. See 42 USC § 2000e-5 (k).

[5] In fact, seven months prior to the trial court's order, the Eleventh Circuit acknowledged that *Perez* was not precedent:

> The district court's reliance on *Perez v. Globe Airport Sec. Services*, 253 F3d [at] 1286 in support of its conclusion was misplaced. At the time of the district court's decision, we had already vacated the *Perez* holding. 294 F3d 1275. Similarly unavailing is [the plaintiff's] continued reliance on this case. A vacated decision has no effect whatever. [Cit.]

*Musnick v. King Motor Co.*, 325 F3d at 1257 (I), n. 1.

[6] We also find that it was error for the trial court to fail to consider whether the application of the agreement would be unconscionable in the context of Jolley's non-TILA claims, and thus whether such claims were subject to arbitration. Some of those claims may have been arbitrable, even under the trial court's reasoning, and if so, the trial court may have been required to send such claims to arbitration although it resulted in the inefficient maintenance of the litigation. See *Krut v. Whitecap Housing Group*, 268 Ga. App. at 443 (2). But given our holding in the context of the TILA claims, we need not address Jolley's other claims.

prohibitive costs is too speculative to justify the invalidation of [the] agreement." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U. S. at 91 (III). Rather, the Court held that Randolph bore the burden of showing that such prohibitive costs are likely, and she failed to meet that burden. Id.

Although the *Perez* opinion distinguished *Green Tree*, the Eleventh Circuit has since interpreted that case in a different manner, casting considerable doubt upon the analysis in *Perez*. Under the Court's more recent interpretation of *Green Tree*, an arbitration agreement may be enforced unless the party opposing arbitration can show that enforcing the agreement will *preclude* effective vindication of federal statutory rights:

> After *Green Tree*, an arbitration agreement is not unenforceable merely because it may involve some "fee-shifting." The party seeking to avoid arbitration under such an agreement has the burden of establishing that enforcement of the agreement would "preclude" him from "effectively vindicating (his) federal statutory right in the arbitral forum." Absent such a showing the agreement may be enforced.

(Citations omitted.) *Musnick v. King Motor Co.*, 325 F3d at 1259 (II). Thus, in order to avoid arbitration, Jolley has the burden of showing that enforcing the CIA arbitration agreement will prevent her from effectively vindicating her TILA rights.

And the Supreme Court's decision in *PacifiCare Health Systems v. Book*, 538 U. S. 401, 403 (123 SC 1531, 155 LE2d 578) (2003), demonstrates that Jolley cannot make that showing at this stage in the current litigation. The arbitration agreements in *PacifiCare* prohibited the arbitrators from awarding punitive damages, and the parties opposing the motion to compel argued that they could not obtain meaningful relief in arbitration because the remedy of treble damages would not be available for their RICO claims. The Supreme Court stated, however, that it was unclear under applicable case law whether treble RICO damages constituted punitive damages, and therefore, "the application of the disputed language to . . . RICO claims is, to say the least, in doubt." Id. at 406 (II). And it would be "mere speculation" to conclude that the arbitrators would interpret the ambiguity in the arbitration agreements "in a manner that casts their enforceability into doubt." (Citation, punctuation and footnote omitted.) Id. at 406-407. Given this level of uncertainty, the justices concluded that it would be inappropriate for the Court to address the issue, and ruled that, instead, the matter should be sent to arbitration:

In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract. [Thus], the proper course is to compel arbitration.

*Id.* at 407 (II). See also *Vimar Seguros y Reaseguros, S. A. v. M/V Sky Reefer*, 515 U. S. 528 (115 SC 2322, 132 LE2d 462) (1995) (matter sent to arbitration because it is premature to address issues of which law applies in arbitration or whether petitioner will receive diminished protection as a result of arbitrator's decision as to which law to apply).

Like the agreements in *PacifiCare*, the arbitration agreement in this case is ambiguous. Although the language of the agreement provides that the parties are responsible for their own costs, the AAA rules, incorporated into the agreement by reference, allow the arbitrator to fashion any remedy that a party could receive in court. And at this interlocutory stage, it cannot be established how the arbitrators will resolve this ambiguity or whether, as a result of their resolution, Jolley will be unable to vindicate her statutory rights. See *Vimar Seguros y Reaseguros, S. A. v. M/V Sky Reefer*, 515 U. S. at 540. Like the issues in *PacifiCare*, the issues of enforceability presented here are "unusually abstract" because we cannot say how the arbitrators will construe the agreement, and Jolley cannot demonstrate at this stage that her statutory rights will be prejudiced.[7] Accordingly, as in *PacifiCare*, "the proper course is to compel arbitration." 538 U. S. at 407. See also *Summers v. Dillards, Inc.*, 351 F3d 1100, 1101 (11th Cir. 2003); *Musnick v. King Motor Co.*, 325 F3d at 1260.

We note that after the completion of the arbitration, Jolley may seek judicial review of the arbitrator's award if she feels her rights were compromised. "At that stage the issue of costs is ripe, and thus, the [trial] court can make an informed judgment as to whether the appellant's statutor[ily] available remedies were hindered by the arbitration." (Citation omitted.) *Summers v. Dillards, Inc.*, 351 F3d at 1101.

*Judgment reversed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 18, 2005.

*James, Bates, Pope & Spivey, Thomas C. James III, Stephen L. Dillard*, for appellants.

---

[7] This is especially true in light of CIA's offer to stipulate in the arbitration proceeding that Jolley would be entitled to all remedies and claims for damages to which she would be entitled in court. See *Anders v. Hometown Mtg. Svcs.*, 346 F3d 1024, 1029 (11th Cir. 2003).

*Morriss, Lober & Dobson, Bruce F. Morriss, William G. Dobson, Sidney L. Moore, Jr.*, for appellee.