A09A0931. ORDER HOMES, LLC et al. v. IVERSON et al.

(685 SE2d 304)

MIKELL, Judge.

In this action by appellees Allen and Tawanna Iverson seeking redress for construction defects in their new home, we granted this interlocutory appeal to consider whether the trial court erred in denying in part appellant Order Homes, LLC's motion to compel arbitration and in denying in whole the motions to compel arbitration filed by appellants Order Construction, Inc., Saeid L. Sadri, Nasser Golshani, and Parisian Homes, Inc. Because the arbitration clause at issue shows that the parties intended to submit the types of claims in dispute to an arbitrator, and because we conclude that the nonsignatory appellants may compel arbitration under the doctrine of equitable estoppel, we reverse the trial court's ruling insofar as it denied appellants' motions to compel.

"[T]he question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is

undeniably an issue for judicial determination."[1] The standard of review of a trial court's ruling on a motion to compel arbitration is "whether the trial court was correct as a matter of law."[2] "[T]he construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review."[3]

The record reflects that in June 2006, Order Homes and the Iversons entered into a New Construction Purchase and Sale Agreement (the Agreement), pursuant to which Order Homes was to construct and sell a new home to the Iversons. Paragraph 14 (B) of the Agreement contained the following clause concerning arbitration:

> Buyer and Seller agree that any construction defect claim not resolved after following the procedure described in OCGA § 8-2-38 *and all other claims between the parties* shall be settled by arbitration through the services of an arbitrator mutually agreed upon by the parties. The decision of the arbitrator shall be final and may be enforced by any court having jurisdiction thereof. The arbitration shall be conducted in accordance with OCGA § 9-9-1 et seq. Notwithstanding the provisions of this subparagraph, if Buyer is claiming under a warranty provided by Seller, the terms and procedures of that warranty shall first apply to the resolution of the claim. In order for this paragraph to be a part of this Agreement it must be initialed by Buyer and Seller; if not initialed it shall be void and unenforceable.[4]

This paragraph was initialed by the Iversons and by Order Homes, who were the only signatories to the Agreement.

In October 2007, the Iversons filed a 15-count complaint against Order Homes, the other appellants, and several other defendants.[5] In their complaint, the Iversons alleged that, after closing the sale and

---

[1] (Citation omitted.) *Pickle v. Rayonier Forest Resources*, 282 Ga. App. 295, 296 (638 SE2d 344) (2006).

[2] (Citation and punctuation omitted.) *Krut v. Whitecap Housing Group*, 268 Ga. App. 436, 441 (2) (602 SE2d 201) (2004); accord *Tillman Park v. Dabbs-Williams Gen. Contractors*, 298 Ga. App. 27 (679 SE2d 67) (2009).

[3] (Citation, punctuation and footnote omitted.) *Crawford v. Great American Cash Advance*, 284 Ga. App. 690, 691 (644 SE2d 522) (2007).

[4] (Emphasis supplied.)

[5] Named as defendants in the original complaint were Order Homes, Order Construction, Parisian Homes, Sadri, Golshani, Government Entity 1, Corporate Entities 1-3, and John Does 1-3. Order Development, Inc., also named as a defendant, was subsequently dismissed without prejudice. Plaintiffs later filed amendments to their complaint to add defendants Truss-Tech Industries, Inc.; Joseph F. Thomas d/b/a JT Construction; Martin Sepulveda; and Peters & Pikula Construction, Inc.

occupying the home for a short time, they found the house to be uninhabitable due to defective construction, and they moved out. The Iversons asserted claims against all defendants based on fraud, deceit, misrepresentation, and equitable rescission of the contract (Counts 1-4); breach of contract (Count 5); negligence, gross negligence, and negligent hire (Counts 6-8); continuing nuisance (Count 9); breach of warranty (Count 10); strict products liability (Count 11); declaratory judgment (Count 12); unjust enrichment (Count 13); and violation of the Uniform Deceptive Trade Practices Act and of the Fair Business Practices Act (FBPA)[6] (Counts 14, 15).

On November 7, 2007, Order Homes, Order Construction, Sadri, and Golshani jointly filed an answer, specifically asserting their right to arbitration under the Agreement; and that same day Order Homes filed a motion to compel arbitration. Order Construction, Sadri, and Golshani filed a motion to compel arbitration under the Agreement on January 9, 2008. Parisian Homes filed its answer to the complaint on March 10, 2008, specifically asserting its right to arbitration, and on March 21, 2008, filed its motion to compel arbitration.

After hearing oral argument on appellants' motion to compel arbitration, the trial court granted the motion as to the Iversons' claims against Order Homes for breach of contract, negligence, gross negligence, and breach of warranty; however, the trial court denied arbitration as to the Iversons' claims against Order Homes for equitable rescission of contract, violation of the FBPA, fraud, deceit, misrepresentation, negligent hire, continuing nuisance, strict products liability, unjust enrichment and violation of the Uniform Deceptive Trade Practices Act. The trial court also denied altogether the other appellants' motions to compel arbitration. Appellants appeal from the order of the trial court.

1. Appellants assert that the trial court erred in refusing to compel arbitration as to all counts of the Iversons' complaint against Order Homes. We agree.

Where contract language is unambiguous, that is, where it is capable of only one reasonable interpretation, "construction is unnecessary and the court simply enforces the contract according to its clear terms."[7] The arbitration clause in the Agreement provides that the arbitration shall be conducted in accordance with the Georgia Arbitration Code (GAC), OCGA § 9-9-1 et seq. In enacting the GAC, the General Assembly established "a clear public policy in

---

[6] Fair Business Practices Act of 1975 (OCGA § 10-1-390 et seq.).

[7] (Footnote omitted.) *D. S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005).

favor of arbitration."[8] Under OCGA § 9-9-6 (a), "[a] party aggrieved by the failure of another to arbitrate" may move the court to compel arbitration; and "[i]f the court determines there is no substantial issue concerning the validity of the agreement to submit to arbitration or compliance therewith and the claim sought to be arbitrated is not barred by limitation of time, the court shall order the parties to arbitrate." Further, "[b]ecause our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes."[9]

(a) In the Agreement, the parties agreed to submit to arbitration not only construction defect claims, but also "all other claims between the parties." The subject matter of the Agreement was the construction and sale of a new home by Order Homes to the Iversons. The faulty construction of the house formed the basis for the Iversons' lawsuit against Order Homes. The Iversons' claims, including those for fraud, deceit, misrepresentation, negligent hire, continuing nuisance, strict products liability, unjust enrichment, and violation of the Uniform Deceptive Trade Practices Act, all constituted "other claims between the parties," falling within the scope of the broad arbitration clause in the Agreement. This Court has ruled that claims for fraud and deceit are within the scope of an arbitration clause which expressly covered "all claims or disputes arising out of or relating to the contract documents, or the breach thereof."[10] The arbitration clause in the Agreement was not limited to claims sounding in contract, but applied to "all other claims" without limitation. Moreover, "where a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration."[11] The trial court erred in denying Order Homes's motion to compel arbitration as to these claims.

(b) Under this Court's decision in *D. S. Ameri*,[12] the Iversons' claim for equitable rescission is also subject to arbitration. In that case, defendants agreed to construct a home and sell it to plaintiffs.[13] Alleging defects in construction, plaintiffs sought rescission of the

---

[8] (Footnote omitted.) *Haynes v. Fincher*, 241 Ga. App. 179, 181 (4) (525 SE2d 405) (1999). Accord *Witherington v. Adkins*, 271 Ga. App. 837, 844 (4) (610 SE2d 561) (2005).

[9] (Citation omitted.) *ABCO Builders v. Progressive Plumbing*, 282 Ga. 308, 309 (647 SE2d 574) (2007).

[10] *Bennett v. Cotton*, 244 Ga. App. 784, 786 (1) (536 SE2d 802) (2000) (arbitration award in home construction contract dispute was res judicata as to one who took part in arbitration and was in privity with another party to contract).

[11] (Citation and punctuation omitted.) *Pickle*, supra at 297 (2) (a).

[12] Supra.

[13] Id. at 825.

contract, based on fraud in the inducement.[14] There, as here, in opposing defendant's motion to compel arbitration, plaintiffs did not argue that the arbitration clause itself was invalid or that they had been fraudulently induced to enter into the agreement to arbitrate; instead, they argued that the arbitration clause would be rendered void by a rescission of the contract, and therefore that the issue of rescission should not be submitted to an arbitrator.[15] Citing OCGA § 9-9-3, this Court reversed the trial court's denial of the defendants' motion to compel arbitration.[16]

In denying Order Homes's motion to compel, the trial court distinguished *D. S. Ameri* on the ground that the arbitration clause in that case specifically provided for arbitration of "any claim for rescission,"[17] which this Court deemed to be "unambiguous language . . . express[ing] the parties' intent to arbitrate even claims or disputes seeking the remedy of rescission."[18] Because the Agreement at issue here did not contain such an express mention of a rescission claim, the trial court concluded that the Agreement's arbitration clause "did not state or contemplate claims for equitable rescission." The trial court denied Order Homes's motion for arbitration as to the rescission claim "because the [arbitration] clause [did] not expressly include such a claim."

We conclude, to the contrary, that the arbitration clause in the Agreement was broad enough to cover the Iversons' claims for equitable rescission. Under OCGA § 9-9-3, "a provision in a written contract to submit any controversy thereafter arising to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award." Even absent any specific mention of claims for rescission in the arbitration clause in the Agreement, we conclude that *D. S. Ameri* applies and is controlling, because the Iversons did not attack the validity of the agreement to arbitrate, but instead argued that the entire contract should be rescinded due to fraud.[19] Therefore, the trial court erred in denying Order Homes's motion to compel arbitration as to the

---

[14] Id.

[15] Id. at 826.

[16] Id. at 827.

[17] (Emphasis omitted.) Id. at 826.

[18] (Footnote omitted.) Id. at 827.

[19] Id. at 826. See *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395, 398, 403-404 (87 SC 1801, 18 LE2d 1270) (1967) (in a contract with a broad arbitration clause, covering "[a]ny controversy or claim arising out of or relating to this [a]greement," arbitrator, not court, should determine claim of fraud in the inducement of the entire contract, as opposed to fraud in the inducement to agree to the arbitration clause).

Iversons' claim for equitable rescission.[20]

(c) The Iversons' claim under the FBPA was also subject to arbitration under the Agreement. OCGA § 9-9-2 (c) sets forth several exceptions to the application of the GAC, two of which are of interest here: the exception for "consumer transactions" under the FBPA, set forth at OCGA § 9-9-2 (c) (7); and the exception found in OCGA § 9-9-2 (c) (8), excluding "sales . . . or loan agreement[s] for the purchase or financing of residential real estate unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement."

OCGA § 9-9-2 (c) (8) has consistently been applied to agreements for the construction and sale of a home, such as the Agreement at issue here, because such agreements constitute the sale of "residential real estate," even though they also provide for the construction of a home.[21] In the case at bar, it is undisputed that the parties initialed the arbitration clause as required by OCGA § 9-9-2 (c) (8). Thus, the arbitration clause of the Agreement is specifically included within the ambit of the GAC by OCGA § 9-9-2 (c) (8).

Because the GAC applies to the Agreement's arbitration clause by reason of OCGA § 9-9-2 (c) (8), we conclude that this arbitration clause is not excluded from the GAC by the "consumer transactions" exception of OCGA § 9-9-2 (c) (7). OCGA § 9-9-2 (c) (7) provides that the GAC "shall not apply" to "[a]ny contract involving consumer acts or practices or involving consumer transactions as such terms are defined in subsection (a) of Code Section 10-1-392, relating to definitions in the [FBPA]." Under the FBPA, "consumer acts or practices" include "acts or practices intended to encourage consumer transactions";[22] and "consumer transactions" include "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes."[23] The broad definition of "consumer transactions" found in the FBPA could conceivably reach an agreement for the construction and sale of a new home. However, the general "consumer transactions" exception to the GAC has not been applied to exclude agreements for the construction and sale of a new home; rather, the GAC has been

---

[20] *D. S. Ameri*, supra at 827.

[21] See *Pinnacle Constr. Co. v. Osborne*, 218 Ga. App. 366, 367-368 (3) (460 SE2d 880) (1995) (under OCGA § 9-9-2 (c) (8), arbitration could not be compelled where parties did not initial arbitration clause in agreement for sale of residential real estate which included a provision to build a new home). Compare *Goodrich v. Southland Homes Corp.*, 214 Ga. App. 790, 791 (2) (449 SE2d 154) (1994) (contract styled "Home Building Agreement" was construction contract within meaning of OCGA § 9-9-2 (b), rather than residential real estate contract under OCGA § 9-9-2 (c) (8)).

[22] OCGA § 10-1-392 (a) (7).

[23] OCGA § 10-1-392 (a) (10).

applied to such contracts if they are initialed as required by OCGA § 9-9-2 (c) (8).[24]

We conclude, therefore, that the FBPA claim set out in the Iversons' complaint is covered by the arbitration clause in the Agreement, which includes "all other claims." It follows that the trial court erred in denying arbitration as to the Iversons' FBPA claim.

2. Appellants contend that the trial court erred in refusing to compel arbitration as to Order Construction, Sadri, Golshani, and Parisian Homes, who were not signatories to the Agreement. Even though the language of the arbitration clause in the Agreement requires arbitration only as to "all other claims between the parties," arbitration may be compelled by these appellants under the doctrine of equitable estoppel.

Arbitration is a matter of contract; therefore, a party cannot be forced to submit to arbitration if he has not agreed to do so.[25] However, under *Price v. Ernst & Young*,[26] nonsignatories to an agreement may have a right to compel arbitration under the doctrine of equitable estoppel, which applies under two circumstances, both of which are present in the case at bar:

> [First,] equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. [Second], application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted

---

[24] See *D. S. Ameri*, supra (GAC applied to arbitration clause in contract for construction and sale of new home); *Goodrich*, supra at 791 (3) (contract for construction of new home did not fall within exception concerning "consumer transactions"). See generally *Baylis v. Daryani*, 294 Ga. App. 729, 730 (1) (669 SE2d 674) (2008) ("it is well settled that a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent") (citation and punctuation omitted). Compare *Dream Maker Constr. v. Murrell*, 268 Ga. App. 721-722 (603 SE2d 72) (2004) (arbitration not required under contract for sale of new house where plaintiffs alleged personal injury, thus triggering exclusion from GAC under OCGA § 9-9-2 (c) (10)).

[25] *Witherington*, supra at 842 (1).

[26] 274 Ga. App. 172 (617 SE2d 156) (2005).

misconduct by both the nonsignatory and one or more of the signatories to the contract.[27]

The Iversons' claims all arise under and rely upon the Agreement between the Iversons and Order Homes, and the gist of their lawsuit concerns the damage they suffered as a result of the defective construction of their home, which was the subject matter of the Agreement. The Iversons' claims thus "arise out of and relate directly to the written agreement."[28] Also, the Iversons allege "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."[29] In their complaint, the Iversons allege that "Parisian, [Order Homes], [Order Development], and [Order Construction] were inextricably involved in and participated in the development of the Lot and ultimate construction of the home"; that each defendant had a role in the construction of the home; that "Defendants jointly and severally, and in conspiracy, designed, developed, hired engineers, purchased pre-engineered materials, and constructed a home that has major latent structural defects that were knowingly and/or [sic] intentionally concealed from Plaintiffs prior to closing."

As appellants point out in their brief, "[t]he Iversons are attempting to sue non-signatories for claims arising out of the [Agreement] on one hand, while avoiding the arbitration clause pertaining to these same claims on the other hand." Equitable estoppel should apply in this case to prevent the Iversons from avoiding arbitration with the nonsignatory appellants.

3. As to the Iversons' claims against those defendants that did not seek arbitration under the Agreement, we note that the trial court may either proceed with the litigation against these defendants, if it so chooses,[30] or exercise its discretion to hold the proceedings against them in abeyance until such time as an arbitration award is handed down.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 19, 2009 —
RECONSIDERATION DENIED OCTOBER 7, 2009.

---

[27] Id. at 175-176 (2) (nonsignatory defendants could compel signatory plaintiff to arbitrate under arbitration clause of stock exchange agreement), citing *MS Dealer Svc. Corp. v. Franklin*, 177 F3d 942, 947 (III) (11th Cir. 1999) (equitable estoppel doctrine applied to allow nonsignatory defendant to compel signatory plaintiff to arbitrate under arbitration clause covering "all disputes . . . between the parties hereto") (id. at 944 (I), 948 (III)).

[28] See *Price*, supra at 176 (2).

[29] (Citation omitted.) Id.

[30] See *Krut*, supra at 444 (3).

*Moore, Ingram, Johnson & Steele, Clay S. O'Daniel, Alexander T. Galloway III, Shapiro, Fussell, Wedge & Smotherman, Ronald A. Williamson*, for appellants.

*Hutto & Cochling, Eric D. Cochling, Charles D. Joyner, Freeman, Mathis & Gary, Neil L. Wilcove, Carlock, Copeland & Stair, David F. Root, Swift, Currie, McGhee & Hiers, Brian W. Burkhalter, Stephen M. Schatz, Kurt R. Hilbert, Sandra Gray*, for appellees.