A07A0781. CRAWFORD v. GREAT AMERICAN CASH ADVANCE, INC.

(644 SE2d 522)

BLACKBURN, Presiding Judge.

In this action involving a "payday" loan contract, Demetris Crawford appeals from the trial court's grant of Great American Cash

---

[5] *Titelman v. Stedman*, 277 Ga. 460, 461 (591 SE2d 774) (2003).

Advance, Inc.'s (GACA) motion to compel arbitration of her counter-claim, arguing that the trial court erred in (1) finding that the arbitration clause was enforceable, (2) finding that the Federal Arbitration Act (FAA) governed this matter, and (3) compelling arbitration of an unconscionable contract. Crawford also argues (4) that the doctrine of res judicata precludes arbitration of this matter. For the reasons set forth below, we affirm.

"[T]he question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination. The standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law." (Citation and punctuation omitted.) *Krut v. Whitecap Housing Group.*[1] Furthermore, "the construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review." *Cash In Advance of Florida v. Jolley.*[2]

So viewed, the record demonstrates that GACA is a South Carolina corporation and is licensed to conduct the business of deferred presentment transactions in South Carolina by the State of South Carolina Board of Financial Institutions. Deferred presentment transactions are more commonly referred to as "payday loans" and can generally be characterized as small-dollar, short-term loans with high interest rates. *Jenkins v. First American Cash Advance of Ga.*[3] In such transactions, a borrower receives a cash advance that becomes due for repayment within a short period of time. Id. As security, the borrower gives a check to the lender in the amount of the cash advance, plus the interest charged by the lender, which is typically quite significant. Id.

Over the course of a couple of weeks in December 2004, Demetris Crawford, an Augusta, Georgia resident, traveled across the state line into South Carolina and entered into two payday loan contracts with GACA. Crawford borrowed $300 in both contracts, with the first having an annual percentage rate of 176 percent and the second having an annual percentage rate of 238 percent. Both contracts contained an identical clause entitled "Arbitration," which provided that:

> Any and all disputes or disagreements between the parties arising out of this agreement or any prior agreement (save and except the lender's rights to enforce the borrower(s)'

---

[1] *Krut v. Whitecap Housing Group*, 268 Ga. App. 436, 441 (2) (602 SE2d 201) (2004).
[2] *Cash In Advance of Florida v. Jolley*, 272 Ga. App. 282 (612 SE2d 101) (2005).
[3] *Jenkins v. First American Cash Advance of Ga.*, 400 F3d 868, 871 (I) (11th Cir. 2005).

payment obligations, in the event of default by judicial or other process) shall be decided by an arbitrator and in accordance with the procedural rules of the American Arbitration Association as presently published and existing. The parties agree to be bound by the decision of the arbitration(s). The arbitration proceeding shall be a condition precedent to any other court proceeding and shall take place in North Augusta, South Carolina unless another location is mutually agreed to by the parties. Each party shall be responsible for its own costs and expenses in presenting the dispute for arbitration. Notwithstanding the applicability of any other law, to any other provision of this agreement, the Federal Arbitration Act, 9 U.S.C. Section 1ff, shall control the construction, interpretation, and application of this paragraph. Any issue as to whether this Agreement is subject to arbitration shall be determined by the arbitrator.

Crawford initialed the arbitration clauses in both loan contracts and also signed both contracts.

Shortly thereafter, Crawford defaulted on both loans. Consequently, GACA filed a collection action in the Magistrate Court of Richmond County. Crawford responded and filed a counterclaim, alleging that she was entitled to damages based on the argument that GACA's loans violated the Georgia Payday Loan Act,[4] which prohibited payday lending in Georgia. In addition, Crawford claimed to represent a putative class of similarly damaged Georgia customers. Subsequently, GACA filed a motion to compel arbitration of the entire matter. The magistrate court denied GACA's motion to compel arbitration and dismissed GACA's collection action on the ground that the payday loan contracts were void ab initio. However, the magistrate court also ruled that it could not retain jurisdiction over Crawford's class action counterclaims, and thus transferred the matter to the superior court. After this transfer, GACA renewed its motion to compel arbitration. The superior court held a hearing on the matter and consequently granted GACA's motion. We granted Crawford's interlocutory application, and this appeal followed.

1. Crawford contends that the arbitration clause contained in GACA's payday loan contracts is unconscionable for several reasons and thus unenforceable. Where there is a specific challenge attacking the validity of an arbitration agreement, the court and not the

[4] OCGA § 16-17-1 et seq.

arbitrator should decide whether the arbitration provision is enforceable. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.;*[5] *Chastain v. Robinson-Humphrey Co.;*[6] *Stewart v. Favors.*[7]

(a) In this matter, Crawford first argues that the arbitration clause is unconscionable because it allows GACA the alternative remedy of enforcing payment obligations through the judicial process, in addition to arbitration, but does not afford Crawford that same right. This argument is without merit. The record shows that Crawford specifically initialed the arbitration clauses and signed the payday loan contracts, demonstrating her intention to be bound by their terms. *Saturna v. Bickley Constr. Co.*[8] Moreover, an arbitration provision is not unconscionable because it lacks mutuality of remedy. Id.; *Caley v. Gulfstream Aerospace Corp.*[9]

(b) Crawford also contends that the arbitration clause is unconscionable because it requires each party to be responsible for "its own costs and expenses in presenting the dispute for arbitration." She argues that this requirement makes it economically infeasible for those like herself to challenge GACA via arbitration. This contention is also without merit. Crawford has not produced any tangible evidence that the requirement that each party bear its own costs and expenses for arbitration will prohibit her from arbitrating this matter. "[T]he mere possibility that [Crawford] could be saddled with prohibitive costs is too speculative to justify the invalidation of [an arbitration] agreement." (Punctuation omitted.) *Cash In Advance of Florida,* supra, 272 Ga. App. at 284-285. See *Green Tree Financial Corp.-Alabama v. Randolph.*[10] Moreover, we have previously held that "lack of sophistication or *economic disadvantage* of one attacking arbitration will not amount to unconscionability." (Emphasis supplied.) *Results Oriented v. Crawford.*[11]

(c) Crawford also contends that the arbitration clause is unconscionable because it provides that the FAA's procedural rules will govern the arbitration, and that borrowers such as herself cannot reasonably be expected to investigate and understand those rules. However, Crawford cites to no evidence or authority in support of this claim. Moreover, as previously noted, Crawford's alleged lack of

---

[5] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395, 403-404 (87 SC 1801, 18 LE2d 1270) (1967).

[6] *Chastain v. Robinson-Humphrey Co.*, 957 F2d 851, 854 (II) (11th Cir. 1992).

[7] *Stewart v. Favors*, 264 Ga. App. 156, 158 (1) (590 SE2d 186) (2003).

[8] *Saturna v. Bickley Constr. Co.*, 252 Ga. App. 140, 142 (555 SE2d 825) (2001).

[9] *Caley v. Gulfstream Aerospace Corp.*, 428 F3d 1359, 1378 (II) (E) (4) (11th Cir. 2005).

[10] *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U. S. 79, 91 (III) (121 SC 513, 148 LE2d 373) (2000).

[11] *Results Oriented v. Crawford*, 245 Ga. App. 432, 441 (1) (c) (538 SE2d 73) (2000).

sophistication does not render the arbitration clause here unconscionable. *Results Oriented*, supra, 245 Ga. App. at 441.

(d) In both her fourth and fifth arguments supporting her contention that the arbitration clause is unenforceable, Crawford appears to reiterate her previous contention that the provision puts borrowers such as herself at a disadvantage by making it economically difficult for borrowers to assert their rights.[12] However, once again, Crawford provides no evidence in support of her assertion that arbitration is cost prohibitive. See *Cash In Advance of Florida*, supra, 272 Ga. App. at 284-285; *Green Tree Financial Corp.-Alabama*, supra, 531 U. S. at 91 (III). In addition, Crawford provides no evidence that any of the agreement's terms will prevent the arbitrator from awarding her the full panoply of relief available under law. See *Bess v. Check Express*.[13] Accordingly, the trial court did not err in finding that the arbitration clause in GACA's payday loan contracts was enforceable.

2. In her second enumeration of error, Crawford contends that the trial court erred in finding that the FAA was controlling law for this matter. We disagree.

The purpose of the FAA was to reverse the longstanding judicial hostility to arbitration agreements and place such agreements upon the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*[14] "The FAA makes enforceable a written arbitration provision in 'a contract evidencing a transaction involving commerce.' 9 USC § 2 (2000)." *Jenkins*, supra, 400 F3d at 874 (III) (A). Although the FAA contains no express preemption provision and does not reflect a congressional intent to occupy the entire field of arbitration, a "state law may nonetheless be pre-empted to the extent that it actually conflicts with [the FAA] — that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Punctuation omitted.) *Volt Information Sciences v. Bd. of Trustees &c.*[15] To accomplish those congressional objectives, the FAA preempts state laws that undermine enforcement of private arbitration agreements. *Southland Corp. v. Keating*;[16] *Results Oriented*, supra, 245 Ga. App. at 436 (1) (a).

---

[12] To the extent Crawford is also claiming that the payday loan contract in its entirety is unconscionable, we address that contention in Division 3, infra.

[13] *Bess v. Check Express*, 294 F3d 1298, 1308 (III) (C) (1) (11th Cir. 2002).

[14] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U. S. 20, 24 (II) (111 SC 1647, 114 LE2d 26) (1991).

[15] *Volt Information Sciences v. Bd. of Trustees &c.*, 489 U. S. 468, 477 (109 SC 1248, 103 LE2d 488) (1989).

[16] *Southland Corp. v. Keating*, 465 U. S. 1, 16 (III) (104 SC 852, 79 LE2d 1) (1984).

Here, Crawford does not dispute that the GACA payday loan contracts contained written arbitration provisions or that the contracts involved interstate commerce. Furthermore, both of the payday loan contracts specifically provide that the FAA "shall control the construction, interpretation, and application" of the arbitration clause. There is no other choice of law provision calling into question any conflict with state law. It is thus clear that the intentions of the parties were that the arbitration would be governed by the FAA. See *Results Oriented,* supra, 245 Ga. App. at 437 (1) (a); *Primerica Financial Svcs. v. Wise.*[17] Accordingly, the trial court did not err in finding that the FAA governed this matter.

3. Crawford further contends that the trial court erred in compelling arbitration, arguing that the GACA payday loan contracts are illegal under the Georgia Payday Loan Act and are thus void ab initio. We disagree.

This issue was recently addressed by the United States Supreme Court in *Buckeye Check Cashing v. Cardegna.*[18] In that case, plaintiffs brought claims against Buckeye (a payday lending company) on the grounds that its loans charged usurious interest rates and violated Florida lending and consumer-protection laws. Id. at 443 (I). When Buckeye moved to compel arbitration, plaintiffs argued that they were not obligated to arbitrate an illegal contract. Id. The issue upon which the Supreme Court focused was whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality. Id. at 444. The Court held "that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Id. at 449 (II) (C). See *Jenkins,* supra, 400 F3d at 882 (III) (C); *Bess,* supra, 294 F3d at 1306 (III) (B). See also *Results Oriented,* supra, 245 Ga. App. at 438 (1) (b).

Here, Crawford entered into presumptively valid agreements to arbitrate any disputes arising out of those agreements, including disputes regarding the validity of the underlying transaction. See *Jenkins,* supra, 400 F3d at 882 (III) (C); *Bess,* supra, 294 F3d at 1306 (III) (B). Given our holding in Division 1 that the arbitration clause contained in GACA's contracts was not unconscionable and was thus enforceable, Crawford's contention that the contracts are illegal in their entirety is an issue for the arbitrator, not the court, to decide.

[17] *Primerica Financial Svcs. v. Wise,* 217 Ga. App. 36, 37 (1) (456 SE2d 631) (1995).
[18] *Buckeye Check Cashing v. Cardegna,* 546 U. S. 440 (126 SC 1204, 163 LE2d 1038) (2006).

See *Buckeye Check Cashing*, supra, 546 U. S. at 449 (II) (C). Accordingly, the trial court did not err in granting GACA's motion to compel arbitration.

4. In her final enumeration of error, Crawford contends that the doctrine of res judicata precludes arbitration of this matter. Specifically, she argues that the trial court's order in a companion case involving the parties,[19] in which it granted her motion for summary judgment dismissing GACA's collection action against her, should have the effect of precluding the same trial court's order compelling arbitration in this matter. However, Crawford waived this contention. Crawford never raised the issue of res judicata in the trial court and has not alleged any specific error made by the trial court in its order compelling arbitration with regard to this issue. Accordingly, we are precluded from consideration of this alleged enumeration of error on appeal. See *Professional Practices Comm. v. Brewer.*[20]

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED MARCH 29, 2007 — ■

■

*Warlick, Tritt, Stebbins & Hall, Charles C. Stebbins III*, for appellant.

*Klosinski & Overstreet, Scott J. Klosinski, James C. Overstreet, Jr., David G. Crockett*, for appellee.

---

[19] This companion case arose as a result of the magistrate court granting Crawford's motion to separate her counterclaims into a separate action.

[20] *Professional Practices Comm. v. Brewer*, 219 Ga. App. 730, 732 (2) (466 SE2d 651) (1995).