**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 2, 2021**

# In the Court of Appeals of Georgia

A20A1724. JHUN et al. v. IMAGINE CASTLE, LLC et al.           MI-059

MILLER, Presiding Judge.

Steven and Yun Suk Jhun seek review of the trial court's order compelling arbitration in their contract action against Imagine Castle, LLC and Alfred and Patricia Hughes. The Jhuns argue on appeal that (1) the trial court erred when it allowed Imagine Castle, an unlicensed contractor, to enforce the arbitration provision and that (2) the trial court abused its discretion when it stayed the proceedings against the Hughes defendants because they were not parties to the arbitration agreement. We conclude that the trial court did not err in either respect and therefore affirm its orders compelling arbitration between the Jhuns and Imagine Castle and staying the remainder of the case pending arbitration.

> Whether a valid and enforceable arbitration agreement exists is a question of law for the court. We therefore review a trial court's order granting or denying a motion to compel arbitration de novo. The appellees, as the parties seeking arbitration, bear the burden of proving the existence of a valid and enforceable agreement to arbitrate. And the validity of an arbitration agreement is generally governed by state law principles of contract formation.

(Citations and punctuation omitted.) *McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 509 (1) (765 SE2d 681) (2014).

The record shows that the Jhuns and Imagine Castle entered into a contract for Imagine Castle to perform remodeling, electrical, plumbing, and structural work in the Jhuns' house. Alfred Hughes is the owner of Imagine Castle, and both Alfred and Patricia Hughes were Imagine Castle's principals. The contract was later amended to include an arbitration agreement between the Jhuns and Imagine Castle. That agreement provided that "[a]ny . . . claim or dispute of any kind or nature between Contractor/Builder and Homeowner/Buyer arising out of or relating in any manner to this Agreement or this transaction . . . shall be decided by binding arbitration" and that "[a]ny questions regarding the interpretation of this arbitration provision or about the arbitrability of a dispute . . . shall be decided by the arbitrator[.]" The agreement further provided that the Federal Arbitration Act ("FAA") would govern the arbitration.

2

According to the Jhuns' complaint, Alfred Hughes represented to the Jhuns that he was a properly licensed contractor. Sometime after the work began, the Jhuns discovered that Imagine Castle was providing shoddy and incomplete work that was not compliant with the requisite ordinances, building codes, and industry standards. Imagine Castle also billed the Jhuns for materials that had not been ordered and for work that had not been completed. The Jhuns questioned Imagine Castle regarding the completion of the work and then refused to make any further payments. Imagine Castle stopped working on the project, and the Jhuns hired other contractors to complete the work.

The Jhuns later sued Imagine Castle and the Hugheses for negligence, fraud, conversion, and civil conspiracy and sought punitive damages, costs, and attorney fees. The Jhuns also asked the trial court to declare the contract unenforceable and void as a matter of public policy because Imagine Castle was not a properly licensed contractor and, in the alternative, raised a claim of breach of contract. In their answer, the defendants admitted that none of them were properly licensed.

The defendants then moved to compel arbitration between the Jhuns and Imagine Castle based on the arbitration agreement in the contract and also moved to stay the proceedings against the Hughes defendants pending arbitration. The Jhuns

opposed the motion on the basis that the arbitration agreement was unenforceable under OCGA § 43-41-17 (b) because the defendants were not licensed contractors. The trial court granted the motion to compel arbitration and stayed the action against the Hughes defendants during arbitration, concluding that the enforceability of the contract was a matter for the arbitrator to determine. We granted the Jhuns' application for an interlocutory appeal from the trial court's order.

1. As their first enumeration of error, the Jhuns argue that the trial court erred when it allowed an unlicensed contractor to enforce an arbitration provision in a housing construction contract because OCGA § 43-41-17 (b) decrees that any contractors who are unlicensed cannot enforce a contract. We disagree.

Under the FAA, "[w]here there is a specific challenge attacking the validity of an arbitration agreement, the court and not the arbitrator should decide whether the arbitration provision is enforceable." (Citations omitted.) *Crawford v. Great American Cash Advance, Inc.*, 284 Ga. App. 690, 692-693 (1) (644 SE2d 522) (2007). However, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." (Citation omitted.) Id. at 695 (3).

4

In response to the defendants' motion to compel arbitration, the Jhuns did not allege any specific challenge to the arbitration agreement itself. Instead, their challenge to the arbitration agreement is part and parcel of their argument that the entire contract is unenforceable due to the defendants' unlicensed status. Under standard FAA arbitration law, therefore, this is a challenge to the entirety of the contract that must be settled by the arbitrator. See *Crawford*, supra, 284 Ga. App. at 695 (3) (challenge to loan contracts as illegal under the Georgia Payday Loan Act was required to be sent to the arbitrator despite the fact that the relevant arbitration provision was contained within the allegedly illegal contracts).

The Jhuns, relying on Georgia's contractor statute, nevertheless argue that this general rule does not apply in this case and that the the contract is per se unenforceable. That law states that "[a]s a matter of public policy, any contract entered into . . . for the performance of work for which a residential contractor or general contractor license is required . . . and which is between an owner and a contractor who does not have a valid and current license required for such work . . . shall be unenforceable in law or in equity by the unlicensed contractor." OCGA § 43-41-17 (b). Such a contract is considered void, "at least as far as [the contractor's] right to enforce it in law or in equity." (Citations omitted.) *Saks Mgmt. & Assoc., LLC v.*

*Sung Gen. Contracting, Inc.*, 356 Ga. App. 568, 573 (2) (a) (849 SE2d 19) (2020). The Jhuns argue that the statute's command that any contracts entered into by unlicensed contractors shall be "unenforceable" means that unlicensed contractors cannot enforce any part of the contract, even arbitration provisions. They argue that allowing Imagine Castle to enforce this arbitration provision would defeat the public policy established by the Legislature in OCGA § 43-41-1 "to safeguard homeowners against faulty, inadequate, inefficient, and unsafe residential and general contractors."

The Jhuns' arguments are unavailing. Georgia law already generally provides that "[any] contract that is against the policy of the law *cannot be enforced*." (Emphasis supplied.) OCGA § 13-8-2 (a). Despite this statutory language, we have previously affirmed orders to arbitrate when a party argues that a contract is unenforceable or void as against public policy. In *Crawford*, supra, 284 Ga. App. at 695-696 (3), for instance, the defendant in a contract action argued that certain loan contracts were illegal and void under the Georgia Payday Loan Act, which decrees that any loan transactions that are in violation of the Act "shall be void ab initio." OCGA § 16-17-3. As part of that argument, she also claimed that the trial court erred in applying an arbitration provision that was contained in the loan contracts. *Crawford*, supra, 284 Ga. App. at 695 (3). Although the Legislature had made it quite

6

clear that payday lending is against the public policy of Georgia, OCGA § 16-17-1, we nevertheless concluded that "Crawford's contention that the contracts are illegal in their entirety is an issue for the arbitrator, not the court, to decide." *Crawford*, supra, 284 Ga. App. at 695 (3).[1]

Second, we also find this case to be controlled by the United States Supreme Court case *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U. S. 440 (126 SCt 1204, 163 LE2d 1038) (2006). In *Cardegna*, the Supreme Court determined that a challenge to a contract that was allegedly void under Florida public policy did not render the arbitration provision in that contract unenforceable. Id. at 445-446 (II) (B). As the Court explained,

> [f]irst, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts. . . . [Therefore,] because respondents challenge the Agreement, but not specifically its

---

[1]    We further note that, while the Jhuns are correct that the Legislature clearly established a strong public policy "to safeguard homeowners against faulty, inadequate, inefficient, and unsafe residential and general contractors," OCGA § 43-41-1, the Legislature has similarly "established a clear public policy in favor of arbitration." (Citation and punctuation omitted.) *Innovative Images, LLC v. Summerville*, ___ Ga. ___ (3) (a) (848 SE2d 75) (2020).

7

arbitration provisions, those provisions are enforceable apart from the remainder of the contract.

Id. at 445-446 (II) (B). In reaching its conclusion, the United States Supreme Court flatly rejected the argument that this severability analysis, and therefore enforcement of an otherwise valid arbitration agreement contained within an unenforceable contract, could turn on an individual state's law or public policy. Id. at 446-448 (II) (B)-(C). "It is true . . . that [this] rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that [the Jhuns'] approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable." *Cardegna*, supra, 546 U. S. at 448-449 (II) (C); see also *Crawford*, supra, 284 Ga. App. at 695-696 (3) (applying *Cardegna* in an arbitration dispute proceeding under the FAA).

Because the Jhuns do not raise any challenge that is specific to the arbitration provision in the contract, we conclude that the trial court did not err when it granted the defendants' motion to compel arbitration.

2. The Jhuns also argue that the trial court erred when it stayed their claims against the Hughes defendants, who were not parties to the arbitration agreement, pending the arbitration. We discern no abuse of discretion.

8

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. We review a trial court's decision to grant a motion to stay for abuse of discretion.

(Citations omitted.) *Austin v. Nagareddy*, 344 Ga. App. 636, 638 (811 SE2d 68) (2018). In situations where some claims are arbitrable and some are not, a trial court may stay the litigation as to the non-arbitrable claims in appropriate circumstances, but it is not required to do so. See *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 20 (IV) (A) n.23 (103 SCt 927, 74 LE2d 765) (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the . . . state trial court under applicable state procedural [rules] as a matter of its discretion to control its docket."); *Krut v. Whitecap Housing Group, LLC*, 268 Ga. App. 436, 443 (2) (c) (602 SE2d 201) (2004) (concluding, however, that trial courts are not required to stay the non-arbitrable claims pending arbitration "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.") (citation omitted).

The Jhuns' claims against the Hughes defendants in this case stem entirely from their status as employees and managers of Imagine Castle, through which the Jhuns allege that they were personally involved in the commission of fraudulent and other tortious acts. As such, the majority of the significant issues in this case, such as whether the contract is enforceable under OCGA § 43-41-17, will essentially be the same for all defendants. Because the Jhuns' claims against the Hughes defendants and those against Imagine Castle are intimately related, the trial court did not abuse its discretion in staying the claims against the Hughes defendants while the remaining parties pursue arbitration.

The trial court thus properly compelled arbitration between the Jhuns and Imagine Castle, and it did not abuse its discretion by staying the proceedings against the Hughes defendants. We therefore affirm its order.

*Judgment affirmed. Mercier, J., and Senior Appellate Judge Herbert E. Phipps, concur.*