A06A2428. LANGFITT et al. v. JACKSON et al.
(644 SE2d 460)

ADAMS, Judge.

Terry Langfitt and John Daniel appeal from the trial court's denial of their motion for judgment notwithstanding the verdict. They argue in that motion, inter alia, that claims asserted by Edwin and Regina Jackson in connection with the construction of the Jacksons' home should have been arbitrated pursuant to their motions to stay proceedings and to compel arbitration.

In reviewing the trial court's order, we look to see whether the trial court [had been] correct as a matter of law in denying the motion to compel arbitration. Thus, the construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review.

(Citations and footnote omitted.) *Cash In Advance of Florida v. Jolley*, 272 Ga. App. 282 (612 SE2d 101) (2005).

In 1995, the Jacksons contracted with Langfitt and Daniel to build their home, and on December 1, 1995, they purchased the home and lot from the two builders. When the house was built, it was enrolled in the "Home Buyers Warranty" program (HBW program), under which the Jacksons received a warranty administered by Home Buyers Warranty (HBW) and insured by National Home Insurance Company (NHIC). The Jacksons signed an application to enroll their home in the HBW program on December 1, 2005 and received a booklet explaining the warranty's terms. The application identified the nature of warranty coverage and provided explicit notice that the warranty agreement contained an arbitration provision:

> Both Builder and Homebuyer must sign this application form. By signing, Homebuyer acknowledges that s/he . . . has received a copy of this form with the Home Buyers Warranty Booklet and CONSENTS TO THE TERMS OF THESE DOCUMENTS INCLUDING THE ARBITRATION PROVISION contained therein.

The Jacksons' application was accepted and the warranty became effective as of December 1, 2005.

Under the terms of the warranty agreement, the home was warranted to be free from defects in materials or workmanship for a period of one year and to be free from defects in the electrical, plumbing and mechanical systems for a period of two years. The minimum standards for the home were explained in the warranty booklet. If any of the components or systems fell below these standards during the warranty period, Langfitt and Daniel shared responsibility with NHIC for the repair or replacement of the deficiency to bring it up to the specified standard. The home was further

warranted to be free of structural defects for ten years.[1] NHIC had the sole responsibility under the warranty for the repair of such structural defects.

The warranty agreement also clarified the Jacksons' obligation to arbitrate claims arising out of the warranty against Langfitt and Daniel:

> Any controversy or claim or complaint arising out of relating to the workmanship/systems limited warranty coverages provided under the terms of this agreement which you and your Builder do not resolve by mutual agreement shall be resolved by final and binding arbitration in accordance with the National Academy of Conciliators (NAC) rules applicable to the Home Warranty Industry in effect at the time of the arbitration, or other NHIC or HBW approved rules.

The agreement recognized, however, that the Jacksons may retain the right to pursue other claims against Langfitt and Daniel in court:

> You may have other rights against your Builder arising out of the construction and/or sale of your home. While you must submit to binding arbitration of warranty claims against your Builder, you may be able to sue your Builder in court for other causes.

The warranty agreement further required that the Jacksons arbitrate all claims against NHIC and HBW:

> Any controversy or claim or complaint which you and NHIC (or HBW) do not resolve by mutual agreement, whether contract, tort, statutory or other controversy, claim or complaint, which concerns your Home or purchase of it, or your rights against or relationship to NHIC (or HBW), shall be settled by final and binding arbitration in accordance with the NAC rules applicable to the Home Warranty Industry, or other NHIC or HBW approved rules. Neither NHIC nor HBW are responsible to you or your Builder for any claim or dispute other than claims or disputes arising out of this warranty. YOUR SOLE REMEDY AGAINST NHIC AND/OR

---

[1] A structural defect was defined as "a) actual physical damage b) to those load-bearing elements of Home which are listed in this paragraph c) which damage is caused by failure of such load-bearing elements d) to the extent that your Home becomes unsafe, unsanitary or otherwise unlivable."

HBW IS FINAL AND BINDING ARBITRATION AS DE-
SCRIBED HEREIN. BY SIGNING THE APPLICATION
FOR HOME ENROLLMENT, YOU WAIVE ANY RIGHT
YOU HAVE, OR MAY HEREAFTER COME TO HAVE, TO
SUE NHIC (AND/OR HBW) IN COURT.

Moreover, the warranty agreement provided that the arbitration
would be governed by the U. S. Arbitration Act, 9 USC §§ 1-16,[2] "to the
exclusion of any provisions of state law," and that the questions of
whether issues are arbitrable would be determined by the arbitra-
tors.

The Jacksons filed their complaint against Langfitt and Daniel
on June 7, 2000, asserting claims for breach of contract, breach of the
HBW warranty contract, fraud and breach of a separate FHA/VA
Warranty of Completion. Langfitt filed a timely answer to the com-
plaint, specifically raising as an affirmative defense the Jacksons'
obligation to arbitrate under the warranty agreement. Daniel filed a
general denial to the Jacksons' claims, and on October 1, 2004,
amended his answer to provide specific denials and affirmative
defenses, including the defense of arbitration.

In the interim, the parties proceeded to court-ordered mediation,
which Langfitt and Daniel assert was completed on September 19,
2001 without resolution of the claims. On December 20, 2001, Lang-
fitt moved to stay the proceedings and compel arbitration of the
Jacksons' claims. Daniel filed a similar motion on January 23, 2002.
The Jacksons opposed the motions, and a hearing on the matter was
scheduled for November 6, 2002. The hearing was not transcribed nor
was a written order entered, but it is apparent that the trial court
denied the defendants' motions and the matter proceeded to a jury
trial on October 4, 2004.

When the case was called for trial, Langfitt renewed his motion
to stay proceedings and compel arbitration, and the trial court took
the matter under advisement. Later when the trial court revisited the
issue of arbitration, the judge expressed strong concerns about
mandatory arbitration provisions found in contracts for the purchase
of such items as a car or a house and opined that such clauses were in
violation of both the U. S. and the Georgia Constitutions. Langfitt and
Daniel contend that the trial court's denial of their arbitration
motions was based upon the judge's apparent bias against mandatory
arbitration provisions under these circumstances. The Jacksons
assert, however, that the trial court denied the motion on the ground

---

[2] The federal act will be referred to herein as the "FAA."

that their claims addressed matters specifically excluded from coverage under the HBW warranty. But no explanation of the trial court's ruling appears in the record.

The case proceeded to trial and the jury returned a verdict in favor of the Jacksons, awarding them damages in the amount of $70,000. Langfitt and Daniel filed a j.n.o.v., once again asserting, inter alia, their rights under the arbitration provision of the HBW warranty. The trial court denied the motion, and this appeal ensued.

1. As an initial matter, we address the Jacksons' contention that the defendants waived their right to arbitration by acting in a manner inconsistent with that right. After being served with the complaint, Langfitt and Daniel first obtained an extension of time to file their answers. Langfitt filed his answer within that extended period and raised his right to arbitration as an affirmative defense. Daniel filed only a general answer without raising the issue of arbitration. Eight months later, the trial court ordered the parties to mediation. In December 2001, three months after the mediation concluded and eighteen months after the complaint was served, Langfitt moved to stay the proceedings and compel arbitration. Daniel filed his motion the next month.[3] No other activity appears in the record until a notice scheduling a hearing on the arbitration motions for November 2002. After the motions were denied, the parties jointly moved for and obtained an extension of the discovery period, after which the defendants took the deposition of Regina Jackson.[4] The parties then proceeded to trial. The Jacksons contend that these actions, along with the defendants' failure to file an interlocutory appeal after the initial motions were denied, resulted in a waiver of the right to arbitration.

"Under Georgia law, an agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration." (Citation, punctuation and footnote omitted.) *Griffis v. Branch Banking & Trust Co.*, 268 Ga. App. 588, 591 (2) (602 SE2d 307) (2004). But we note that "[t]here is a strong presumption against waiver under the FAA." (Citation omitted.) *In re Jim Walter Homes*, 207 SW3d 888, 898 (2) (Tex. App. 2006). And the Eleventh Circuit has found that waiver in this context also involves the concept of prejudice to the other party:

> The Eleventh Circuit has held that despite the strong policy in favor of arbitration, a party may, by its conduct, waive its right to arbitration. . . . A party has waived its right to

---

[3] Over two years later, he amended his answer to assert an arbitration defense.

[4] No other discovery documents are included in the record nor was a pre-trial order filed.

arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, in so acting, has in some way prejudiced the other party.

(Punctuation and footnote omitted.) *USA Payday Cash Advance Center # 1 v. Evans*, 281 Ga. App. 847, 849 (637 SE2d 418) (2006), quoting *S & H Contractors v. A. J. Taft Coal Co.*, 906 F2d 1507, 1514 (III) (11th Cir. 1990). See also *Everts v. Century Supply Corp.*, 264 Ga. App. 218, 220 (590 SE2d 199) (2003) ("[A] showing of prejudice to the other party appears to be the central requirement of waiver implied from conduct.") (punctuation and footnote omitted).

Georgia courts have held that where a party engages in the litigation process before seeking to enforce his right to arbitrate, he has waived that right.[5] Here, although the defendants initially sought an extension of time, the record indicates that they did not invoke any other aspect of the litigation process before seeking to assert their rights under the arbitration agreement. They did not file a counterclaim or any motions, other than their arbitration motions, and it appears that no discovery occurred until after the motions were denied. While they did participate in court-ordered mediation before moving to arbitrate, we find no waiver in their participation in that form of alternative dispute resolution. Mediation is designed to resolve disputes without litigation, and thus is not inconsistent with the purposes of arbitration. See *Scaffidi v. Fiserv, Inc.*, 2006 WL 2038348, *4 (E.D. Wis. 2006) (no waiver where movant participated in pre-suit mediation); *In re DaimlerChrysler Svcs. North America*, 2005 WL 3526351, *4 (Tex. App. 2005) (participation in limited discovery and court-ordered mediation did not waive arbitration under the FAA). The mediation also accounted for part of defendants' delay in filing their arbitration motions. Moreover, the defendants only actively engaged the litigation process after their motions were denied. And Langfitt, at least, reasserted the right to arbitration at

---

[5] See, e.g., *USA Payday Cash Advance Center # 1 v. Evans*, 281 Ga. App. at 849 (waiver occurred where defendants requested additional time to answer, entered a stipulation extending the time for all defendants, answered plaintiff's discovery requests, opposed plaintiff's motion for leave to amend complaint, and moved for pro hac vice admission of co-counsel from Texas before moving to compel arbitration); *Griffis v. Branch Banking & Trust Co.*, 268 Ga. App. at 591 (finding waiver where defendants asserted a multicount counterclaim, engaged in extensive discovery and waited nine months before asserting their right to arbitration); *Phil Wooden Homes v. Ladwig*, 262 Ga. App. 792, 793 (586 SE2d 697) (2003) (finding waiver where defendants asserted a counterclaim and obtained discovery before asserting a right to arbitration); *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 674 (2) (583 SE2d 466) (2003) (waiver where defendant did not raise arbitration until actual trial after participating in protracted discovery, motions, pre-trial order and jury selection).

trial and both parties raised the issue in their motion for judgment notwithstanding the verdict.[6]

Further, their failure to appeal the trial judge's denial of their arbitration motions does not result in a waiver. "[P]rior to final judgment, orders denying a motion to stay proceedings and compel arbitration are not appealable except under the interlocutory appeal provisions of OCGA § 5-6-34 (b)." (Citations, punctuation and footnotes omitted.) *American Gen. Financial Svcs. v. Vereen*, 282 Ga. App. 663, 665 (639 SE2d 598) (2006) (holding that this procedural requirement was not preempted by FAA). And this Court has held that the failure to seek an interlocutory appeal from the denial of a motion to stay and compel arbitration does not waive the right to raise the issue on a final appeal. *Bishop Contracting Co. v. Center Bros., Inc.*, 213 Ga. App. 804, 805 (1) (445 SE2d 780) (1994). Accordingly, we find that the defendants' actions did not waive their right to arbitration.

2. Turning to the issue of arbitration, we first conclude that the arbitration provision in this case is governed by the FAA. The warranty agreement expressly states that the FAA applies. "Thus, as with any other contract, the parties' intentions control." (Punctuation and footnote omitted.) *Rushing v. Gold Kist*, 256 Ga. App. 115, 118 (1) (567 SE2d 384) (2002). See also *Results Oriented v. Crawford*, 245 Ga. App. 432, 436 (1) (a) (538 SE2d 73) (2000). In addition, the FAA applies to "a contract evidencing a transaction involving commerce," 9 USC § 2, and the contract here meets that criteria. The Jacksons are Georgia residents and HBW is a Colorado corporation. Any complaints under the warranty were to be sent to HBW's Colorado office. In addition, the house had a "FHA/VA Warranty of Completion of Construction," and presumably involved the use of construction materials procured through the channels of interstate commerce. Thus, even if the agreement did not invoke the FAA, it would apply under the facts of this case. See *Allied-Bruce Terminix Cos. v. Dobson*, 513 U. S. 265 (115 SC 834, 130 LE2d 753) (1995); *Krut v. Whitecap Housing Group*, 268 Ga. App. 436, 440 (1) (602 SE2d 201) (2004). And we find that the arbitration provision in this case is enforceable under federal law. See *Lopez v. Home Buyers Warranty Corp.*, 670 S2d 35, 38 (Ala. 1995).

3. Applying federal law, we note that the FAA preempts any state law that conflicts with its provisions or undermines the enforcement

---

[6] Although it certainly would have been better practice for Daniel to raise an arbitration defense in his original answer, we find no waiver under the limited circumstances of this case. Langfitt, his co-obligor under the warranty, raised an arbitration defense in his answer, and the claims against the two defendants are identical. Thus, the claims that would be arbitrable against Daniel were preserved for arbitration by Langfitt. Moreover, Daniel took no additional steps inconsistent with arbitration until after his motion for arbitration was denied.

of private arbitration agreements. *Results Oriented v. Crawford*, 245 Ga. App. at 436 (1) (a). See also *Southland Corp. v. Keating*, 465 U. S. 1, 16 (104 SC 852, 79 LE2d 1) (1984). "[T]o the extent that [state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it will be preempted by the FAA. (Citation and punctuation omitted.) *Volt Information Sciences v. Bd. of Trustees &c.*, 489 U. S. 468, 477 (109 SC 1248, 103 LE2d 488) (1989).

The Jacksons contend that the arbitration of their claims was not enforceable under Georgia law because they did not initial the arbitration provision as required under OCGA § 9-9-2 (c) (8). The statute requires that, to be enforceable, an arbitration clause in "[a]ny sales agreement or loan agreement for the purchase or financing of residential real estate" must be initialed by the parties to the agreement. Pretermitting the issue of whether this requirement would even apply to a home warranty agreement, we find that it is preempted by the FAA. *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36, 41 (6) (456 SE2d 631) (1995) ("the state law and policy with respect to the signature requirement [of OCGA § 9-9-2 (c) (9)] must yield to the paramount federal law") (citations and punctuation omitted). Compare *Pinnacle Constr. Co. v. Osborne*, 218 Ga. App. 366, 368 (4) (460 SE2d 880) (1995) (where no issue that FAA applied, failure to initial arbitration provision in sales agreement found to prohibit its enforcement).

4. Having concluded that the arbitration provision in this case was enforceable, we must now determine whether the Jacksons' claims were subject to arbitration under that provision. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Citation omitted.) *Pickle v. Rayonier Forest Resources*, 282 Ga. App. 295, 296 (638 SE2d 344) (2006). But under the FAA any doubts about the scope of arbitrable issues should be resolved in favor of arbitration:

> The [U. S.] Supreme Court has instructed that there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. Accordingly, an injunction against arbitration is appropriate only where an asserted claim clearly falls outside of the substantive scope of the agreement.

(Citations, punctuation and footnote omitted.) *BellSouth Corp. v. Forsee*, 265 Ga. App. 589, 591 (595 SE2d 99) (2004).

Applying those principles to this case, we agree with the Jacksons' assertion that the warranty agreement contains two separate arbitration agreements, one applicable to claims against Langfitt and Daniel "arising out of or relating to the workmanship/systems limited warranty coverages," and the other applicable to claims against NHIC and HBW arising out of the agreement, "which concern your Home or purchase of it, or your rights against or relationship to NHIC (or HBW)." The second of these arbitration provisions is clearly much broader in scope than the first, and specifically includes any contract, tort, statutory and other claims. In contrast, the first arbitration clause, which is at issue here, is limited to claims arising under the one-year warranty for defects in materials and workmanship and the two-year warranty for defects in the electrical, plumbing, and mechanical systems. Moreover, the warranty agreement explicitly acknowledges that the Jacksons may retain the right to assert claims not covered by that agreement in court.

The Jacksons' complaint asserted claims for breach of contract, breach of the HBW warranty contract, fraudulent concealment and breach of a separate FHA/VA Warranty of Completion. It is apparent from the outset that the Jacksons' claim under the FHA/VA warranty "clearly falls outside of the substantive scope" of the pertinent arbitration provision, as it asserts a claim for damages under a completely separate agreement and relies upon the standards set forth in that agreement. It is equally apparent that the claim for breach of the HBW warranty falls squarely within the arbitration provision. The complaint alleged that the warranty was breached by defects in "workmanship" that the Jacksons discovered and reported within the first year, but for which Langfitt and Daniel failed to make required repairs or replacements.

The issue of whether the other claims are subject to arbitration is less clear cut. In determining whether the arbitration agreement applies to these claims, we must "focus on the complaint's factual allegations rather than the legal causes of action asserted." (Footnote omitted.) *In re FirstMerit Bank*, 52 SW3d 749, 754 (II) (A) (Tex. 2001). The breach of contract claim alleges that Langfitt and Daniel failed to construct the Jacksons' house "in a good and workmanlike manner" and further alleges "defective workmanship" and "defective materials." While the claim purports to fall under the terms of the construction agreement, the allegations are framed in the language of the warranty. In addition, we note that the construction agreement specifically references the warranty, and requires that the Jacksons accept it as the only implied or expressed warranty relating to the house. The warranty application echoes this language. Similarly, the

Jacksons' claim for fraudulent concealment seeks to recover for latent defects in construction, which were not discoverable until March 1996. The nature of these defects is not apparent from the complaint.

We find that to the extent that the Jacksons' causes of action for breach of contract or fraudulent concealment seek damages for defects in workmanship, materials or systems covered by the one-year or two-year HBW warranties, such claims are subject to arbitration. See *Country Life Homes v. Shaffer*, 2007 WL 333075, *4 (Del. Ch. 2007). The Jacksons contend, however, that the damages they sought were for defects expressly excluded from the warranty's coverage, which they assert was demonstrated by the evidence at trial. We agree that claims clearly falling outside the warranty coverage would not be subject to arbitration as arbitration is required only for claims arising out of or relating to such coverage. See *Nunez v. Westfield Homes of Florida*, 925 S2d 1108, 1111 (Fla. App. 2006). But unless a claim "clearly falls outside the substantive scope" of the arbitration provision, it must be sent to the arbitration under the general federal presumption in favor of arbitration and in accordance with the warranty agreement's provision that the arbitrators are to determine issues of arbitrability.

We are unable, however, to evaluate the Jacksons' argument on this point, because the notice of appeal expressly excluded from the appellate record the portions of the trial transcript containing the evidence and testimony, and the Jacksons have not supplemented that record. Accordingly, we reverse the trial court's denial of the motions for j.n.o.v. and to stay and compel arbitration, and remand for a determination consistent with this opinion as to whether the remaining claims are subject to arbitration under the warranty agreement.

*Judgment reversed and case remanded. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 28, 2007.

*Meacham, Earley, Jones, Akin & Fowler, Christopher L. Meacham*, for appellants.

*Worthington & Flournoy, Thomas M. Flournoy, Jr.*, for appellees.