## A08A0940. HARRIS v. ALBANY LIME & CEMENT COMPANY et al.
### (662 SE2d 160)

BLACKBURN, Presiding Judge.

In this application to stay arbitration, Mark Alan Harris appeals the trial court's final judgment, in which the court concluded that the pertinent arbitration clause was valid and enforceable and in which the court therefore refused to stay the arbitration brought against Harris by Harris's former attorney and that attorney's businesses. We hold that the arbitration clause was voidable by Harris on the conflict of interest ground that Harris's former attorney (who negotiated the clause, who advised Harris to sign the agreement containing the clause, and who was himself a party to the agreement) was a personal beneficiary of that clause and in fact along with his businesses is a party in this attempted arbitration proceeding against his former client. Moreover, the common-law claims of indemnity and contribution, which the former attorney and his businesses seek to arbitrate against Harris, arose independently of the terms of the agreement and were therefore not covered by the arbitration clause in any case. Accordingly, we reverse.

The relevant facts are undisputed. Harris's father-in-law (Hilliard P. Burt, Sr.) is an attorney who was also the principal in several businesses. In 2002 Harris, who was a general contractor, persuaded the father-in-law to use his businesses (Albany Lime & Cement Company, The Burt Company, Burt Development Company, and Hotel Trust) to purchase a residence and to hire Harris (on a cost-plus-ten-percent basis) to renovate the residence. Harris was also to share in the profits from the resale of the residence. After the renovation was complete and the residence resold in 2004, the new purchasers found numerous construction defects in the house and in 2005 sued Harris for negligent construction, breach of contract, and fraud. The father-in-law entered an appearance as Harris's attorney in the action and actively represented him.

A few months later, the purchasers added the father-in-law and his businesses as defendants in the action. Though now a party to the suit, the father-in-law continued to represent Harris in the action,

despite conflict-of-interest questions raised by the plaintiffs. Cf. Rule 3.7 (a), Bar Rule 4-102 (d), Georgia Rules of Professional Conduct. Unable to locate any written contract as to the terms of the renovation agreement, the father-in-law in 2005 advised Harris, for purposes of the ongoing litigation, to execute a contract (backdated to 2002) memorializing the terms of the renovation agreement between Harris on the one hand and the father-in-law and his businesses on the other hand. The father-in-law prepared the contract and included an arbitration clause, even though no such clause had been a part of the original 2002 renovation agreement. Harris and the father-in-law and his businesses executed the contract.

In May 2006 while the purchasers' suit was still pending and the father-in-law continued to represent Harris therein, Harris's wife filed for divorce from Harris, and the father-in-law, acting on behalf of the wife (his daughter), filed a notice of lis pendens against Harris on certain marital property. A month later, the father-in-law moved to withdraw as Harris's counsel in the purchasers' lawsuit. Without participation from Harris, the father-in-law and his businesses mediated a settlement with the purchasers, in which the father-in-law and his businesses paid $200,000 to the purchasers.

The father-in-law and his businesses then sent a demand to Harris, seeking reimbursement of the $200,000 under common-law theories of contribution and indemnification, and demanding arbitration pursuant to OCGA § 9-9-6 (c) under the arbitration clause of the backdated renovation contract. In response, Harris applied to the trial court in the present action to stay the arbitration on the ground that the arbitration clause was unenforceable due to conflicts of interest. Cf. OCGA § 9-9-6 (d). After an evidentiary hearing, the trial court found that because Harris had entered the written renovation contract (containing the arbitration clause) knowingly and without undue duress, the court would not stay the arbitration. Harris appeals.

1. The first and foremost issue is whether the arbitration clause is enforceable. "Where there is a specific challenge attacking the validity of an arbitration agreement, the court and not the arbitrator should decide whether the arbitration provision is enforceable." *Crawford v. Great American Cash Advance*.[1] See *Harris v. SAL Financial Svcs*.[2] "As the part[ies] seeking arbitration, [the father-in-law and his businesses] bear[ ] the burden of proving the existence

---

[1] *Crawford v. Great American Cash Advance*, 284 Ga. App. 690, 692-693 (1) (644 SE2d 522) (2007).

[2] *Harris v. SAL Financial Svcs.*, 270 Ga. App. 230, 231 (606 SE2d 293) (2004).

of a valid and enforceable agreement to arbitrate." *Ashburn Health Care Center v. Poole*.[3]

The nature of the attorney-client relationship between the father-in-law and Harris evinces the egregious conflict of interest that led to the agreement to arbitrate at issue. While acting as Harris's attorney in the purchasers' suit, the father-in-law persuaded Harris to execute an agreement (containing the relevant arbitration provision) with the father-in-law and his businesses, which waived Harris's right to litigate (against the father-in-law and his businesses) disputes arising out of the agreement. See *Ashburn Health Care Center*, supra, 286 Ga. App. at 27 (arbitration agreement waives litigation rights). Such an obvious conflict of interest strikes at the heart of the confidential fiduciary trust inherent in the relationship between an attorney and his client, making the transaction voidable at the option of the client. As eloquently explained in *Stubinger v. Frey*,[4]

> [i]t is obvious that this relation (that of client and attorney) must give rise to great confidence between the parties, and to very strong influences over the actions and rights and interests of the client. The situation of an attorney or solicitor puts it in his power to avail himself not only of the necessities of his client, but of his good nature, liberality, and credulity to obtain undue advantages, bargains, and gratuities. Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, *but it often interposes to declare transactions void* which between other persons would be held unobjectionable. . . . By establishing the principle that while the relation of client and attorney subsists in its full vigor *the latter shall derive no benefit to himself from the contracts, or bounty, or other negotiations of the former*, it supersedes the necessity of any inquiry into the particular means, extent, and exertion of influence in a given case; a task often difficult, and ill-supported by evidence which can be drawn from any satisfactory sources. . . . [T]he general rule of public policy, which discountenances transactions between persons who are situated in a confidential relation towards each other, applies with particular force to attorneys-at-law, who are officers of the court, and are, on that ground, as well as on account of the powerful influence which they exercise over

---

[3] *Ashburn Health Care Center v. Poole*, 286 Ga. App. 24, 25 (648 SE2d 430) (2007).
[4] *Stubinger v. Frey*, 116 Ga. 396, 398-400 (42 SE 713) (1902).

the minds of their clients, restrained from dealing with those whose interests they have in charge. There are authorities which sustain the proposition that such a [transaction], though made without fraud or undue advantage and upon the payment of an adequate price, *is nevertheless voidable at the option of the client.*

(Citations and punctuation omitted; emphasis supplied.) See *Reeves v. Callaway.*[5] See also *Crayton v. Spullock*[6] (attorney entrusted with litigation may not derive therefrom any personal benefit conflicting in the least degree with his client's interests; transaction involving attorney was set aside). See generally Rule 1.8 (a), Bar Rule 4-102 (d), Georgia Rules of Professional Conduct.

Based on these authorities, we hold that the arbitration provision here was voidable at the option of Harris, who has vigorously sought to void the provision throughout these proceedings to stay the arbitration. The trial court erred in finding the provision enforceable.

2. Moreover, we note that even if the arbitration provision were enforceable, it would not apply to the common-law indemnification and contribution claims that the father-in-law and his businesses wish to arbitrate. Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Punctuation omitted.) *Langfitt v. Jackson.*[7] "[W]hether an agreement creates a duty for the parties to arbitrate the particular grievance[ ] is undeniably an issue for judicial determination." *Pickle v. Rayonier Forest Resources.*[8]

In this regard, the Supreme Court of Georgia recently considered the reach of an arbitration clause in a limited liability company's operating agreement, which provided for arbitration of any disputes "arising out of or in connection with, or relating to," the operating agreement. *Ga. Rehabilitation Center v. Newnan Hosp.*[9] Even though the operating agreement provided for dissolution under certain circumstances, one party sought to avoid arbitrating the company's dissolution where such dissolution was commenced under OCGA § 14-11-603, "which provides an independent legal mechanism for the judicial and administrative dissolution of a limited liability company." *Ga. Rehabilitation Center*, supra, 283 Ga. at 336

---

[5] *Reeves v. Callaway*, 140 Ga. 101, 106 (2) (78 SE 717) (1913).

[6] *Crayton v. Spullock*, 87 Ga. 326, 327-328 (13 SE 561) (1891).

[7] *Langfitt v. Jackson*, 284 Ga. App. 628, 635 (4) (644 SE2d 460) (2007).

[8] *Pickle v. Rayonier Forest Resources*, 282 Ga. App. 295, 296 (638 SE2d 344) (2006).

[9] *Ga. Rehabilitation Center v. Newnan Hosp.*, 283 Ga. 335 (1) (658 SE2d 737) (2008).

(1). The Supreme Court concluded that this statutory claim of dissolution did not arise out of or relate to the terms of the operating agreement and therefore did not have to be submitted to arbitration. Id.

Here, the arbitration clause provides that "[a]ny disagreement arising out of this contract or from the breach thereof shall be submitted to arbitration." However, the father-in-law and his businesses do not seek to arbitrate any disagreement arising out of the renovation contract or any breach thereof. Rather, they seek to arbitrate their common-law claims for contribution and indemnification to compel Harris to compensate them for the $200,000 they paid to settle the action brought by the purchasers for his defective construction. This common-law principle is based on the concept that "[i]f a person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action for indemnity against the person whose wrong has thus been imputed to him." (Punctuation omitted.) *Nguyen v. Lumbermens Mut. Cas. Co.*[10] Such a duty to indemnify arises "by operation of law, *independently of contract.*" (Punctuation omitted; emphasis supplied.) Id. Accordingly, the claims asserted by the father-in-law and his businesses arise independently of the renovation contract and are therefore not covered by the arbitration clause, even if the clause were enforceable.

For these reasons, the trial court erred in denying the application to stay the arbitration.

*Judgment reversed. Miller and Ellington, JJ., concur.*

DECIDED APRIL 24, 2008 —
RECONSIDERATION DENIED MAY 12, 2008.

*Bovis, Kyle & Burch, Wayne S. Tartline, Charles M. Medlin*, for appellant.

*Divine, Finney & Dorough, Kermit S. Dorough, Jr.*, for appellees.

---

[10] *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 557 (2) (583 SE2d 220) (2003).