**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2020**

# In the Court of Appeals of Georgia

A19A1704. CATE et al. v. PATTERSON et al.

MERCIER, Judge.

In this libel action, defendants Forrest Cate, III, and Forrest Cate Auto Group, LLC d/b/a North Georgia Sales Center (collectively, "Cate Auto") appeal from a jury verdict in favor of plaintiffs Anthony and Arica Patterson. Cate Auto argues that the trial court erred in failing to refer all issues to arbitration, giving conflicting jury instructions on the issue of libel per se, and denying its motion for judgment notwithstanding the verdict. We discern no error and affirm.

Construed in the light most favorable to the verdict, the record reveals that in March 2015, the Pattersons went to North Georgia Sales Center to rent a U-Haul for their move to Georgia from Tennessee, but none were available. The salesperson, Todd Dilbeck, informed the Pattersons that he "had good deals on trailers." Dilbeck

offered to sell one of the trailers to the Pattersons for $1,125. The Pattersons accepted Dilbeck's offer and purchased the trailer with a check in the amount of $1,125. Anthony Patterson and Dilbeck signed a bill of sale. Dilbeck helped the Pattersons attach the trailer to their vehicle and assisted them in checking the trailer's lights and turn signals. As the Pattersons were leaving the sales center with the trailer, Anthony Patterson noticed that the price tag on the trailer showed a price of $2,498, and thought, "I got a good deal."

Two days later, Dilbeck realized that he had sold the trailer at a price that was less than what the sales center had paid for it, and he contacted the Pattersons saying that he had "made a huge mistake" and requesting that they either pay the difference in price or return the trailer. Dilbeck also stated that he had put the incorrect serial number for the trailer on the bill of sale. The Pattersons refused to return the trailer and offered to "split the difference" with the sales center. Dilbeck apparently refused the offer, and he and the owner of the sales center, Forrest Cate, called the Pattersons several times, demanding that they return the trailer and accusing them of having taken the wrong trailer. On one occasion, during a discussion about the sale in the Pattersons' driveway, Dilbeck accused the Pattersons of stealing the trailer. The

2

Pattersons contacted the police to report Dilbeck's and Cate's actions, showed an officer the bill of sale, and were told by the officer that it was a civil matter.

Cate reported the trailer stolen to the county sheriff's department and was advised that the matter was of a civil nature. He then filed a criminal warrant application in magistrate court against Anthony Patterson for theft by deception for leaving the premises with the wrong trailer and not returning it. However, the magistrate court found no probable cause to issue a warrant and dismissed the action.

Two months later, Cate published an advertisement in two local newpapers. The advertisements showed a picture of the purported trailer, with the word "REWARD" at the top, and offered a $500 reward

> for the return or information leading to the return of: 2015 Arising Enclosed Trailer White In Color, 6' x 10' Single Axle, SERIAL #5YCBE1016FH022499 Last Seen with Anthony C. and Arica Patterson, 106 Ancel Dr., Lafayette GA 30728 Trailer was Taken from North Georgia Sales Center in Lafayette Ga in March without proper ownership, documentation and payment and has not been returned. Any Sale Or Transfer of This Trailer from ANYONE Other Than Its[ ] Rightful Owner NORTH GEORGIA SALES CENTER is illegal CONTACT North Georgia Sales Center 706-638-2928.

The Pattersons retained counsel who contacted the newpapers to inform them that Cate's advertisements were libelous, and demanded a retraction. The newpapers published retractions, but Cate attempted to again have the advertisements published. When the newspapers refused to publish the advertisements a second time, Cate had one of the advertisements published in a bi-weekly magazine.

In August 2015, the Pattersons filed a complaint against Cate Auto alleging breach of contract, intentional infliction of emotional distress, defamation, invasion of privacy (false light), and civil conspiracy. Cate Auto filed an answer denying the allegations of the complaint, and months later it moved to dismiss the case contending that the parties had, based on the terms of the bill of sale, contractually obligated themselves to submit the matter to binding arbitration. Following a hearing, the trial court dismissed the Pattersons' breach of contract claim as arising from or related to the bill of sale and therefore within the arbitration provision, but ruled that because the remaining claims contained factual allegations which were outside the scope of the contract's arbitration provision, those claims would proceed to trial.[1]

---

[1] The trial court granted a certificate of immediate review following its ruling on the motion to dismiss, and Cate Auto filed an application for interlocutory review. See Case No. A16I0214. This Court denied the application on June 20, 2016.

4

At the end of a three-day trial, the jury found that the defendants committed the torts of libel and invasion of privacy by false light against the Pattersons[2] and awarded each of them $1,125 in damages. The jury also awarded the Pattersons $25,000 in attorney fees and $47,750 in punitive damages. Following entry of the trial court's judgment on the verdict, the defendants filed a motion for judgment notwithstanding the verdict and a motion for new trial. The trial court denied both motions, and this appeal followed.

1. Cate Auto contends that the trial court erred in denying its motion for judgment notwithstanding the verdict because the evidence was insufficient to prove libel. The trial court's denial of a motion for judgment notwithstanding the verdict is to be reviewed under the any evidence test. *Patterson-Fowlkes v. Chancey*, 291 Ga. 601, 602 (732 SE2d 252) (2012). "[T]he evidence is to be construed most favorably toward the party opposing the motion. The question before this Court, then, is not whether the verdict and judgment of the trial court were merely authorized, but whether a contrary judgment was demanded." *Turnage v. Kasper*, 307 Ga. App. 172, 178 (1) (704 SE2d 842) (2010) (citations and footnotes omitted).

---

[2] The claim for intentional infliction of emotional distress was withdrawn. The jury was not presented with a claim for civil conspiracy.

"A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). "The publication of the libelous matter is essential to recovery." OCGA § 51-5-1 (b). In an action for printed defamation, "malice is inferred from the character of the charge." OCGA § 51-5-5. Slander includes "[i]mputing to another a crime punishable by law." OCGA § 51-5-4 (a) (1). "Although OCGA § 51-5-4 refers to slander and not libel, the definition of slander in Georgia has been incorporated into the definition of libel." *Lucas v. Cranshaw*, 289 Ga. App. 510, 515 (2) (659 SE2d 612) (2008) (citation and punctuation omitted).[3] Thus, the requirements for slander per se apply to libel per se. *Cottrell v. Smith*, 299 Ga. 517, 524 (II) (A) (788 SE2d 772) (2016). With regard to imputing a crime,

> to constitute slander per se, the words at issue must charge the commission of a specific crime punishable by law. Where the plain import of the words spoken impute no criminal offense, they cannot have their meaning enlarged by innuendo. Indeed, the statement must

---

[3] We note that OCGA § 51-5-2 provides a separate cause of action for newspaper libel: "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of the person and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel." OCGA § 51-5-2 (a). However, the Pattersons' complaint did not include this cause of action.

6

give the impression that the crime is actually being charged against the individual and couched in language as might reasonably be expected to convey such meaning to a hearer of the statement; a vague statement or even a derogatory one does not amount to slander per se when a person cannot reasonably conclude from what is said that the comments are imputing a crime to the plaintiff.

Id. at 524 (II) (A) (citations and punctuation omitted). "[I]t is libelous per se to falsely state that a person is guilty of a crime or has a criminal case pending against him." *Harcrow v. Struhar*, 236 Ga. App. 403, 404 (511 SE2d 545) (1999) (citations omitted).

The evidence presented here showed that Cate Auto published advertisements that offered a reward for the return of the trailer, stating that the trailer was "taken . . . without proper ownership, documentation and payment" and was last seen with the Pattersons. The plain import of these words impute the criminal offense of theft to the Pattersons, a crime for which they had not been charged or found guilty. See OCGA § 16-8-2 (theft by taking) or OCGA § 16-8-3 (theft by deception). The Pattersons also presented evidence that they were in lawful possession of the trailer. Accordingly, because the evidence was sufficient to sustain the jury's verdict as to libel per se, the court properly denied Cate Auto's motion for judgment not withstanding the verdict.

7

See *Wolff v. Middlebrooks*, 256 Ga. App. 268, 270-271 (1) (568 SE2d 88) (2002) (court correctly allowed jury to consider slander claim based upon defendant's statement imputing to plaintiff the crimes of adultery or fornication); *Davidson v. Walter*, 93 Ga. App. 290, 293 (2) (91 SE2d 520) (1956) (holding that plaintiff set forth a viable defamation action based upon defendant's alleged false statement that plaintiff had committed theft); see also *Melton v. Bow*, 241 Ga. 629, 630-631 (247 SE2d 100) (1978) ("To impute the crime of theft to a person is actionable per se without proof of special damages.").

2. Cate Auto asserts that the trial court erred in failing to refer all claims to arbitration pursuant to OCGA § 9-9-4 (d).[4] It argues further that the question of whether those claims relate to the bill of sale is subject to the arbitration agreement in the bill of sale. We review the court's refusal to refer the Pattersons' tort claims to arbitration to determine if it was correct as a matter of law. *D. S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005). We first consider whether it is the court or an arbitrator that decides what claims are subject to arbitration. As

---

[4] This subsection provides: "In determining any matter arising under this part, the court shall not consider whether the claim with respect to which arbitration is sought is tenable nor otherwise pass upon the merits of the dispute." While Cate Auto relies on the Georgia Arbitration Code, the arbitration provision in the bill of sale provides that it is to be construed pursuant to the Federal Arbitration Act.

the Georgia Supreme Court has explained, "in the absence of an agreement to the contrary, issues of substantive arbitrability are for a court to decide." *Brown v. RAC Acceptance East*, 303 Ga. 172, 175 (2) (a) (809 SE2d 801) (2018) (citation and punctuation omitted). As the bill of sale here did not contain an agreement to arbitrate threshold issues concerning the bill of sale, it was proper for the court to decide which issues were subject to arbitration. See generally id.

Although the trial court dismissed the Pattersons' breach of contract claim, the court ruled that their tort claims were not subject to arbitration because they contained factual allegations regarding matters outside the scope of the bill of sale. We agree. "Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Harris v. Albany Lime & Cement Co.*, 291 Ga. App. 474, 477 (2) (662 SE2d 160) (2008) (citation and punctuation omitted). Here, the arbitration clause in the bill of sale provided:

> 4) ARBITRATION; WAIVER OF RIGHT TO TRIAL BY JURY; NO CLASS ACTION. Buyer hereby agrees that any dispute, controversy or claim (collectively, a "claim") arising from or related to the transaction contemplated by this Buyer's Order that Buyer may have with "Seller" . . . shall be resolved only through arbitration and not through litigation . . . . This Paragraph . . . is mutually binding upon both Buyer and Seller

9

and is to be construed pursuant to the terms of the Federal Arbitration Act.

The question then is whether the Pattersons' tort claims "arose from" or "are related to" the sales transaction. "In determining whether the arbitration agreement applies to these claims, we must focus on the complaint's factual allegations rather than the legal causes of action asserted." *Langfitt v. Jackson*, 284 Ga. App. 628, 636 (4) (644 SE2d 460) (2007) (citation and punctuation omitted). We look to federal decisions in construing claims under the Federal Arbitration Act. See, e. g., *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 676 (3) (583 SE2d 466) (2003). And, as the Eleventh Circuit has explained, the focus should be on whether the tort or breach was an immediate, foreseeable result of the performance of contractual duties. *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F3d 1109, 1116 (II) (11th Cir. 2001). "Disputes that are not related--with at least some directness--to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." Id.

The Pattersons' complaint alleged that Cate Auto caused an advertisement to be published that stated they had committed felony theft and were in possession of a stolen trailer, and that they had been damaged by the publication of the

advertisement. The libel and invasion of privacy (false light) claims were not immediate, foreseeable results of the performance of the bill of sale, but arose solely and independently from Cate Auto's subsequent advertisements. See *Harris*, supra, 291 Ga. App. at 478 (2) (arbitration clause in construction contract did not apply to indemnification claim that arose independently of the contract); see also *Gamble v. New England Auto Finance, Inc.*, 735 Fed. Appx. 664, 666 (III) (11th Cir. 2018) (arbitration provision in automobile loan agreement did not apply to "post-agreement conduct that allegedly violate[d] a separate, distinct federal law"); compare *Cordoba v. Directv*, 2020 U.S. App. LEXIS 5024, slip op. 4-5 (IV) (11th Cir. 2000) (court erred in denying motion to compel arbitration of claim for violation of federal act where arbitration provision in customer agreement governed "claims arising out of or relating to any aspect of the relationship between the parties" (punctuation and emphasis omitted)). The trial court, therefore, properly concluded that the tort claims were not subject to arbitration.

Moreover, even if the Pattersons' tort claims were governed by the arbitration clause, Cate Auto waived its right to compel arbitration. "Under Georgia law, an agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration." *Langfitt*, supra, 284 Ga. App. at 632 (1) (citation and

11

punctuation omitted). The same is true for waiver under the Federal Arbitration Act, with the addition that the inconsistent action has in some way prejudiced the other party. See *USA Payday Cash Advance Ctr. #1 v. Evans*, 281 Ga. App. 847, 849 (637 SE2d 418) (2006). Rather than seek arbitration of the dispute, Cate Auto first pursued criminal action against the Pattersons and caused to be published advertisements offering a reward for the return of the trailer. It was only when these attempts failed, and after the Pattersons filed their complaint, that Cate Auto file its motion to dismiss on the ground that the dispute was governed by the arbitration clause. By taking actions inconsistent with the arbitration clause, Cate Auto waived that provision. See *Taft v. Burttram*, 254 Ga. 687, 688 (1) (333 SE2d 585) (1985) (swearing out criminal warrants instead of seeking to arbitrate was the "clearest kind of waiver" (citations and punctuation omitted)); see also *Schinazi v. Eden*, 351 Ga. App. 151, 158-159 (1) (830 SE2d 531) (2019) (appellants' failure to invoke arbitration and instead participate in five years of litigation constituted waiver); *American Car Rentals v. Walden Leasing*, 220 Ga. App. 314, 318 (2) (469 SE2d 431) (1996) (party waived arbitration clause where it initiated legal action instead of proceeding to arbitration, did not seek arbitration in its complaint, and did not object to court placing case on the trial calendar).

12

3. Cate Auto asserts that the trial court gave conflicting jury instructions on the issue of libel per se, rendering the verdict invalid because it is impossible to know whether jurors based their decision on the proper charge or the improper charge. "It is well established that a jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law. But jury charges cannot be construed in isolation. Instead, they must be read and considered as a whole in determining whether the charge contained error." *Curry v. DOT*, 341 Ga. App. 482, 484 (801 SE2d 95) (2017) (citations and punctuation omitted).

The trial court instructed the jury as follows:

> As it pertains to this case, slander is defined by Georgia Code 51-5-4 as follows: Slander or oral defamation consists in, 1, imputing to another a crime punishable by law. In the situation described above, damage is inferred.
>
> . . .
>
> To be defamation per se, the words are those which are recognized as injurious on their face without the aid of extrinsic proof. Should extrinsic facts be necessary to establish the defamatory character of the words, the words do not constitute defamation per se.
>
> . . .

Whether stated directly or by implication or by innuendo, it is libelous per se to falsely state that a person is guilty of a crime or has a criminal case pending against him.[5]

Although Cate Auto argues without clear explanation that these instructions were conflicting, it appears to complain of the court's instruction on "innuendo" in the context of libel per se. The court first explained in the second paragraph quoted above, that where the words impute no criminal offense, the meaning cannot be enlarged by innuendo, but then instructed in the third paragraph that falsely stating directly or by implication *or innuendo* that a person is guilty of a crime is libel per se. Here, the trial court properly instructed that libel per se requires a showing that the words are injurious on their face without the aid of extrinsic proof. See *Smith v. DiFrancesco*, 341 Ga. App. 786, 788 (1) (802 SE2d 69) (2017). However, where the defamatory character of the words do not appear on their face, "they are not defamatory per se, but per quod, and are said to require innuendo."[6] Id. (citation and punctuation omitted); see also *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 688

_____

[5] This part of the instruction is taken verbatim from *Harcrow v. Struhar*, 236 Ga. App. 403, 404 (511 SE2d 545) (1999).

[6] "An essential element of an action for libel per quod is that the plaintiff be able to show special damages." *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 689 (2) (500 SE2d 1) (1998).

(2) (500 SE2d 1) (1998). "Innuendo" in this sense means needing extrinsic evidence to explain what is doubtful or ambiguous. See id. In paragraph three of the jury instruction above, the word "innuendo" is used synonymously with "implication."

While not clearly stated, the instruction as a whole explained that libel per se cannot be established by extrinsic evidence and that the words must be injurious on their face. The complained-of instruction informs the jury that for a libel per se claim to be valid, the imputed crime does not have to be named specifically but can be determined by implication from the words used, as in this case. "[T]he words at issue must charge the commission of a specific crime punishable by law." *Cottrell*, supra, 299 Ga. at 524 (II) (A) (citation and punctuation omitted).

Under these circumstances, in reviewing the charge as a whole, we cannot say that the trial court committed reversible error in its instruction. See generally *Collins & Assoc. v. Henry County Water and Sewerage Auth.*, 290 Ga. App. 782, 785 (4) (a) (661 SE2d 568) (2008).

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*